**LINDNER FUND, INC., et al., Plaintiffs,**

v.

**POLLY PECK INT'L PLC,
et al., Defendants.**

No. 91 Civ. 6481 (JFK).

United States District Court,
S.D. New York.

July 8, 1992.

Bader and Bader, White Plains, N.Y. (I. Walton Bader, of counsel), for plaintiffs.

Latham & Watkins, New York City (Frederic J. Zepp, Selvyn Seidel, Robert J.

Rosenberg, of counsel), for Polly Peck Int'l PLC.

## OPINION AND ORDER

KEENAN, District Judge:

## INTRODUCTION

Before the Court is the motion of Defendant Polly Peck International PLC ("Polly Peck") to dismiss, Fed.R.Civ.P. 12(b), or alternatively to stay the action. For the reasons that follow, Defendant's motion to dismiss is granted.[1]

## BACKGROUND

Polly Peck is a publicly held, multinational conglomerate organized under the laws of the United Kingdom ("UK") and headquartered in London. It is a holding company for a network of over 200 subsidiaries worldwide. Until October 1990, Polly Peck's ordinary stock was listed and traded on the London stock exchange.

In the third quarter of 1990, Asil Nadir, the then-chairman of Polly Peck, made an aborted bid to take the company private. In the wake of his failed attempt, investors and bank creditors began to lose confidence in the company, and were unwilling to extend Polly Peck the credit it required to fund its day-to-day activities. Polly Peck met with its bank creditors in October 1990 to discuss a standstill agreement that would have allowed Polly Peck time to organize its affairs. The discussions were unsuccessful, and on October 22, 1990, one of the creditors, The National Bank of Canada, presented a petition to the Companies Court of England and Wales in the Chancery Division of the High Court of Justice (the "English Court") requesting the "winding-up," or immediate liquidation, of Polly Peck under the United Kingdom Insolvency Act 1986 ("Insolvency Act").

Wanting to avoid immediate liquidation, the Polly Peck Board of Directors applied to the English Court for an "Administration Order" to permit Polly Peck to try to reorganize. An administration order directs that, during the period for which the order is in force, the affairs, business and property of the company are managed by a court-appointed administrator. *See* Memorandum In Support of Motion of Polly Peck International PLC to Dismiss or Stay All Proceedings ("Polly Peck Mem.") at 3 n. 2.[2]

On October 25, 1990, the English Court dismissed the winding-up petition of the National Bank of Canada and issued the desired administration order for the express purposes of ensuring

(1) the survival of [Polly Peck] and the whole or any part of its undertaking as a going concern; or failing that (2) the approval of a voluntary arrangement [similar to a plan or reorganization under Chapter 11] under Part I of the Insolvency Act; or (3) a more advantageous realization of Polly Peck's assets than would be effected on a winding up.

*See* Polly Peck Mem. at 4 (quoting *In the Matter of Polly Peck Int'l PLC,* No. 009296 of 1990 in the High Court of Justice, Chancery Division, Companies Court, Order dated October 25, 1990).

In issuing the Administration order, the English Court appointed the Polly Peck administrators "to do all such things as may be necessary for the management of the affairs, business and property of the company." Insolvency Act § 14(1)(a). More specifically, the Insolvency Act empowers the administrators to take possession of, sell and dispose of Polly Peck's

---

**1.** Defendants John Turner, David S. Fawcus, Mark Ellis and Stoy Hayward are in the process of filing individual motions to dismiss the amended complaint, which was filed on March 31, 1992. Defendant Asil Nadir, the former principal of Polly Peck, is not a resident of the United States and has not yet appeared in the action.

**2.** An administration order and an administrator are akin to a petition under Chapter 11 of the United States Bankruptcy Code and a trustee

who is appointed as the debtor's representative under 11 U.S.C. § 323(a). *See* Polly Peck Mem. at 3–4, n. 2. Here, the English Court appointed three administrators: two are primarily responsible for achieving the purposes of the administration order, and one is responsible for investigating possible claims by Polly Peck against Asil Nadir and any current or former officers, advisors or bankers of Polly Peck. *See* Polly Peck Mem. at 3–4 n. 2.

property, to raise or borrow money and grant security over its property, to appoint professionals to assist them in performing their duties, and to do anything else necessary to achieve the purposes of the administration order. *See generally* Insolvency Act, Schedule 1. In essence, the administrators have powers analogous to that of a trustee in bankruptcy in a chapter 11 case. *See* Polly Peck Mem. at 5.

The appointment of the Polly Peck administrators triggered a stay on all judicial and other proceedings against Polly Peck, a stay similar to the automatic stay triggered by the filing of a chapter 11 petition. *See id.* By statute, the stay prohibits the commencement or continuation of any proceedings against Polly Peck or its property except with the consent of the Polly Peck administrators or upon leave of the English Court. *See* Insolvency Act § 11(3)(d). The stay remains in effect during the life of the Administration Order, which is terminated only by order of the English Court. Insolvency Act §§ 5(3)(a), 18.

The Polly Peck insolvency proceedings are estimated to be the largest in the history of the United Kingdom. Polly Peck has approximately 2,000 creditors, not including shareholders, whose claims presently amount to approximately $2.3 billion. The Polly Peck administrators have essentially taken over management of the company, and are trying to stabilize and protect the value of Polly Peck's businesses in order to accomplish the goals set forth in the administration order. In the midst of this complex administration, Plaintiffs filed this lawsuit claiming violations of the Securities Exchange Act of 1934, Sections 18 and 27, and negligence. Plaintiffs purchased Polly Peck ordinary stock, or American Depositary Receipts ("ADRs"), in the United States between December 21, 1987 and August 21, 1990.

Polly Peck contends that having to defend this action would

> drain the financial and human resources of [Polly Peck] so as to threaten the PPI Administrators' efforts. An effective defense of this action would require [Polly Peck] to expend an immense amount of time and incur tremendous costs conducting and responding to all types of discovery, drafting and responding to motions related to issues including, but not limited to, liability and damages, and locating and examining third party witnesses. The enormity of a trial of this action presents further burdens. For example, many of the witnesses would have to be transported from overseas for what could be a very lengthy trial.

Polly Peck Mem. at 8. Accordingly, Polly Peck contends that the suit should be dismissed on the grounds of comity and forum non conveniens. Alternatively, Polly Peck seeks a stay of the case pending a determination by the Polly Peck administrators or the English Court as to when and where plaintiffs' claims may be best adjudicated.

## DISCUSSION

*Dismissal on Grounds of International Comity*

Comity is the "recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). It is settled that federal law recognizes decisions of foreign courts on the basis of international comity. *Id.*

Comity is extended to decisions of a foreign court "if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard S.S. Co. v. Salen Reefer Servs. AB,* 773 F.2d 452, 457 (2d Cir.1985); *see Hilton,* 159 U.S. at 202–03, 16 S.Ct. at 158.

American courts have traditionally extended comity to foreign bankruptcy proceedings by dismissing actions filed by creditors in United States courts. *See, e.g., Canada S.R. Co. v. Gebhard,* 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883) (dismissing action challenging reorganization plan

based on Canadian law and adopted in Canada); *DeYoung v. Beddome*, 707 F.Supp. 132, 136 (S.D.N.Y.1989) (dismissing stockholder action on basis of comity extended to Canadian court's approval of challenged acquisition); *Kenner Prods. Co. v. Societe Fonciere et Financiere Agache–Willot*, 532 F.Supp. 478 (S.D.N.Y.1982) (action on guaranty suspended on basis of comity extended to French bankruptcy proceedings); *Cornfeld v. Investors Overseas Services, Ltd.*, 471 F.Supp. 1255, 1261 (S.D.N.Y.1979) (dismissing indemnity action on basis of comity extended to liquidation proceedings in Canada), *aff'd*, 614 F.2d 1286 (2d Cir. 1979).

■ Deference to foreign bankruptcy proceedings is appropriate notwithstanding that the plaintiff in the United States court is an American individual or entity. *See, e.g., Drexel Burnham Lambert Group, Inc. v. Galadari*, No. 84–2602, 1987 WL 6164, at *21, 1987 U.S. Dist. LEXIS 5030, at *47 (S.D.N.Y. Jan. 29, 1987); *Fleeger v. Clarkson Co.*, 86 F.R.D. 388, 393 (N.D.Tex. 1980); *Cornfeld*, 471 F.Supp. at 1261; *Canada S.R. Co. v. Gebhard*, 109 U.S. 527, 537, 538, 3 S.Ct. 363, 369–70, 370, 27 L.Ed. 1020 (1883). Further, deference may be given to foreign bankruptcy proceedings where the American suit is based on United States securities laws. *See Kohn v. American Metal Climax, Inc.*, 458 F.2d 255 (3d Cir.), *cert. denied*, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972).

■ In deciding whether to dismiss a creditor's action in deference to foreign bankruptcy proceedings involving the debtor, the court must consider whether the foreign bankruptcy proceedings comport with American notions of fairness and due process. *See Drexel Burnham Lambert Group, Inc. v. Galadari*, No. 84–2602, 1987 WL 6164, at *21, 1987 U.S. Dist. LEXIS 5030, at *47 (S.D.N.Y. Jan. 29, 1987); *Cunard*, 773 F.2d at 459 (deference given to Swedish bankruptcy proceedings that are "not dissimilar to those of our Bankruptcy Code"). While the foreign proceedings need not be identical to those under the Bankruptcy Code, they must abide by standards of fundamental fairness. *See In re Axona Int'l Credit & Commerce, Ltd.*, 88 B.R. 597, 610 (Bankr.S.D.N.Y.1988), *aff'd*, 115 B.R. 442 (S.D.N.Y.1990).

■ Comity is regularly accorded to bankruptcy proceedings in sister common-law jurisdictions because there is a presumption that such proceedings are fair and comport with American notions of due process. *See, e.g., In Re Axona*, 88 B.R. 597 (Bankr.S.D.N.Y.1988), *aff'd*, 115 B.R. 442 (S.D.N.Y.1990). The procedures under the United Kingdom Insolvency Act are comparable to the procedures under the Bankruptcy Code, and therefore extending comity to such proceedings is appropriate. *See In Re Gercke*, 122 B.R. 621, 627, 632 (Bankr.D.C.1991).

Extending comity to the English liquidation proceeding recommends that this action be dismissed. As Polly Peck observes, dismissal of this action would not only be supported by case law and general principles of international comity with respect to foreign bankruptcies, but would further the public policies underlying the automatic stay provisions of the English Insolvency Act and the analogous provision of the United States Bankruptcy Code. *See* Polly Peck's Memorandum of Law in Support of Motion to Dismiss or Stay All Proceedings at 13–15.

The Court also observes that dismissing this action will not unduly prejudice Plaintiffs. They may, if they have not already, file a notice of claim with the United Kingdom court, and will be placed in a position similar to that of Polly Peck's other creditors. Further, even were this action to continue, and were Plaintiffs ultimately to prevail, they would be forced to collect on their judgment in the United Kingdom in any event, as Polly Peck has no assets in the United States.

Having granted the motion to dismiss on comity grounds, the Court need not reach Defendant's motion to dismiss or stay the action on forum non conveniens grounds.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the action against it on grounds of comity is granted without preju-

dice to Plaintiffs filing a claim in the United Kingdom proceedings. Plaintiffs are directed to do one of the following by July 14, 1992: (1) advise the Court what steps they intend to take as to defaulting defendant Asil Nadir, or (2) submit an order to show cause why default judgment should not be entered as to Nadir; the Court will set a return date on the order to show cause.

SO ORDERED.