**ALLSTATE LIFE INSURANCE CO., et al., Appellants,**

v.

**LINTER GROUP LIMITED, et al., Appellees.**

Nos. 1378, 1379, Dockets 92–9064L, 93–7052CON.

United States Court of Appeals, Second Circuit.

Argued April 22, 1993.

Decided June 2, 1993.

John F. Harnes, New York City (Silverman, Harnes, Obstfeld & Harnes, on the brief), for appellants.

Francis M. Holozubiec, New York City (Terrence J. Galligan, and Kirkland & Ellis, on the brief), for appellees Linter Companies and their liquidators, officers, and directors.

George Brandon, New York City (B. Kelly Kiser, and Milbank, Tweed, Hadley & McCloy, on the brief), for appellee Chase AMP Bank Limited.

*The following filed a brief without oral argument:*

Boulanger, Hicks, Stein & Churchill, P.C., New York City (J. Portis Hicks, and Todd C. Girolamo, on the brief), for appellee Bank of New Zealand.

Cleary, Gottlieb, Steen & Hamilton, New York City (Mitchell A. Lowenthal, on the brief), for appellee Sumitomo Intern. Finance Australia Ltd.

Davis, Polk & Wardwell, New York City (Steven F. Goldstone, and Bradley J. Butwin, on the brief), for appellees Australia and New Zealand Banking Group Ltd., Commonwealth Bank of Australia, State Bank of South Australia, and Westpac Banking Corp.

Fried, Frank, Harris, Shriver & Jacobson, New York City (Jed S. Rakoff, and John Sullivan, on the brief), for appellee Security Pacific Australia Ltd.

Simpson Thacher & Bartlett, New York City (John J. Kerr, Michael J. Chepiga, and John C. Gustafsson, on the brief), for appellee Barclays Bank Australia Ltd.

Before: TIMBERS, KEARSE, and ALTIMARI, Circuit Judges.

TIMBERS, Circuit Judge:

Appellants appeal from judgments entered in the Southern District of New York, Robert P. Patterson, Jr., *District Judge,* dismissing securities actions on the grounds of comity and forum non conveniens in recognition of liquidation proceedings pending in Australia.

On appeal, appellants contend that the court abused its discretion in dismissing their actions.

We reject appellants' claims and we affirm the judgments in all respects.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

The actions consolidated for this appeal, *Allstate Life Ins. Co. v. Linter Group Ltd.,* 91 Civ. 1655 (*Linter I*) and *Allstate Life Ins. Co. v. Linter Group Ltd.,* 91 Civ. 2873 (*Linter II*), arose from the October 13, 1988 public offering in the United States by appellee Linter Textiles Corporation Ltd. (Linter Textiles), an Australian corporation, of approximately $200 million of its 13¾% Senior Subordinated Debentures. The debentures were registered with the Securities and Exchange Commission (SEC), underwritten by Drexel Burnham Lambert, Inc., and issued pursuant to a trust indenture between Linter Textiles and United States Trust Company of New York. Pursuant to SEC regulations, Linter Textiles filed an amended registration statement and disseminated a prospectus to the public.

Prior to the offering, Linter Textiles' parent corporation, appellee Linter Group Ltd. (Linter Group), had outstanding debt of 323,000,000 in Australian dollars. This debt was guaranteed to nine Australian and New Zealand banks (Banks) by Linter Textiles' subsidiaries through negative pledge agreements. On the day before the public offering, Linter Group, Linter Textiles' subsidiaries, and the Banks executed identical agreements releasing the subsidiaries from their guarantees in exchange for promises by Linter Textiles and its subsidiaries to enter into new agreements with the Banks and with each other to guarantee Linter Group's debt within 30 days. These agreements were not

disclosed in Linter Textiles' prospectus or its registration statement. Instead, the prospectus stated that Linter Textiles would be virtually debt free after the offering.

In 1991, Linter Group, Linter Textiles, and Linter Textiles' subsidiaries (collectively the Linter companies) became insolvent and were placed in liquidation by orders of the Supreme Court of New South Wales, Australia. Subsequently, appellants, a group of institutional investors, including insurance companies and publicly-traded mutual funds owning more than $120 million in debentures, commenced an action in the Australian Federal Court against, *inter alia*, the Linter companies and the Banks, alleging violations of Australian law in connection with the public offering. Appellants also commenced a declaratory judgment action in the Equity Division of the New South Wales Court requesting a ruling under Australian law that their claims were not subordinate to the Banks' claims. Appellants subsequently have attempted unsuccessfully to stay these proceedings in favor of their United States actions, *Linter I* and *Linter II*. At present, both Australian suits are pending.

(A) *Linter I*

On March 8, 1991, appellants commenced an action in the Southern District of New York against the Linter companies, their liquidators, and several of their officers and directors, alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934, as well as state and common law. Specifically, appellants alleged that Linter Textiles' prospectus and registration statement contained material misrepresentations that induced them to purchase debentures. On December 12, 1991, defendants in that action moved to dismiss or stay the action on the basis of the ongoing liquidation proceedings in Australia and on the ground of forum non conveniens. Following oral argument on the motion, on March 20, 1992, the court ordered the parties to submit additional briefing on the issue of whether the Australian insolvency proceedings were being conducted in an unfair manner so that appellants' claims would be prejudiced in those proceedings. In an opinion and order dated June 1, 1992, the court granted defendants' motion to dismiss, on the ground of comity, in favor of the ongoing liquidation proceedings in Australia. Judgment was entered on June 8, 1992. On September 4, 1992, the court denied appellants' Fed.R.Civ.P. 59(e) motion to amend the judgment.

(B) *Linter II*

On April 26, 1991, appellants commenced another action in the Southern District of New York against the Linter companies and the Banks, alleging that the Banks aided and abetted as well as conspired with the Linter companies to defraud them, in violation of § 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder. In July 1991, the Banks moved to dismiss the complaint on the ground of forum non conveniens. In an opinion and order dated January 9, 1992, the court denied the Banks' motion. *Allstate Life Ins. Co. v. Linter Group Ltd.*, 782 F.Supp. 215 (S.D.N.Y.1992). Accordingly, on February 14, 1992, the Banks answered the complaint and asserted cross-claims for contribution and indemnification against the Linter companies. After the court dismissed *Linter I*, however, the Banks filed a second motion to dismiss on the ground of forum non conveniens. The Linter companies also moved to dismiss on the ground of comity, asserting that the rationale of the court's decision in *Linter I* was equally applicable to *Linter II*. In an opinion and order dated December 21, 1992, the court granted both motions. Judgment was entered on January 4, 1993.

Appellants now appeal from both judgments, asserting that the court abused its discretion in dismissing *Linter I* on the ground of comity and *Linter II* on the grounds of comity and forum non conveniens.

II.

(A) *Comity*

■ Appellants contend that the court improperly dismissed *Linter I* and *Linter II* against the Linter companies, their liquidators, and several of their officers and directors on the ground of comity. The Supreme Court has defined comity as "the rec-

ognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164 (1895). As a general rule, comity may be granted where "it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard S.S. Co. v. Salen Reefer Serv. AB,* 773 F.2d 452, 457 (2 Cir.1985). Indeed, as long as the foreign court abides by "fundamental standards of procedural fairness", granting comity is appropriate. *Id.*

Moreover, we have recognized that comity is particularly appropriate where, as here, the court is confronted with foreign bankruptcy proceedings. *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713 (2 Cir.1987) ("American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings."). We also recognize that, since comity is an affirmative defense, the Linter companies carried the burden of proving that comity was appropriate. *Drexel Burnham Lambert Group Inc. v. Galadari,* 777 F.2d 877, 880 (2 Cir.1985). Further, since the extension or denial of comity is within the court's discretion, we will reverse the court's decision only when we find an abuse of discretion. *Remington Rand Corp.–Delaware v. Business Sys., Inc.,* 830 F.2d 1260, 1266 (3 Cir.1987); *Cunard, supra,* 773 F.2d at 460.

In determining whether the Australian insolvency proceedings warranted comity, the court, applying the law of this Circuit, focused on several factors as indicia of procedural fairness. These factors included: (1) whether creditors of the same class are treated equally in the distribution of assets; (2) whether the liquidators are considered fiduciaries and are held accountable to the court; (3) whether creditors have the right to submit claims which, if denied, can be submitted to a bankruptcy court for adjudication; (4) whether the liquidators are required to give notice to the debtors' potential claimants; (5) whether there are provisions for creditors' meetings; (6) whether a foreign country's insolvency laws favor its own citizens; (7) whether all assets are marshalled before one body for centralized distribution; and (8) whether there are provisions for an automatic stay and for the lifting of such stays to facilitate the centralization of claims. *Cunard, supra,* 773 F.2d at 459–60; *In re Gee,* 53 B.R. 891, 903 (Bankr.S.D.N.Y.1985).

In the instant case, appellants do not challenge the court's finding that Australian law satisfies the first seven of these factors. Rather, appellants contend that the court abused its discretion in finding that former § 371(2) of the New South Wales Companies Code (superseded by § 471(2) of the Corporations Law) provides for a sufficient stay to facilitate the centralization of claims. Appellants assert that § 371(2) differs from the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362 (1988 & Supp. III 1991), in that the former provides a stay by leave of court only, while the latter automatically provides for a stay. This difference, appellants contend, demonstrates that the Australian proceedings are not fundamentally fair and comity should not have been granted.

Contrary to appellants' assertions, however, there is no requirement that Australian liquidation proceedings be identical to United States bankruptcy proceedings. *In re Brierly,* 145 B.R. 151, 166 (Bankr.S.D.N.Y.1992) ("Nothing dictates that the foreign law be a carbon copy of our law...."); *Lindner Fund, Inc. v. Polly Peck Int'l PLC,* 143 B.R. 807, 810 (Bankr.S.D.N.Y.1992) ("Foreign proceedings need not be identical to those under the Bankruptcy Code"). Indeed, contrary to appellants' assertion, the court was not required to split hairs to determine that Australian law, in general, provides a fair forum in which to litigate appellants' claims. What is important is that Australian law provides a stay procedure to centralize all claims and "enable[ ] the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner." *Cunard, supra,* 773 F.2d at 458. The fact that the Australian procedure differs slightly from the United States' stay procedure is irrelevant, especially where, as

here, there is no indication that appellants would be prejudiced if they are required to maintain their actions in Australia. Further, the fact that appellants have received notice of every step of the proceedings, have attended all scheduled meetings and court hearings, are represented on the Committees of Inspection advising the liquidators, and have filed two actions in the Australian courts, indicates that the Australian proceedings generally comport with fundamental standards of procedural fairness. *Id.* at 457.

Affording comity also did not violate any laws or public policies of the United States. *Id.* at 456. "American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." *Id.* at 458. Further, where, as here, "the granting of comity to a Foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion", comity has long been recognized as appropriate. *Id.*

Particularly illuminating here is *Lindner Fund*, 143 B.R. at 810, where a bankruptcy court in our Circuit dismissed a securities action, brought by American citizens, in favor of English bankruptcy proceedings. The court recognized that its decision was "supported by case law and general principles of international comity ... [and] would further the public policies underlying the automatic stay provisions of the English Insolvency Act and the analogous provision of the United States Bankruptcy Code." *Id.* Similarly, granting comity is supported here by prior decisions of this court and furthers United States policy. *Cunard, supra*, 773 F.2d at 459 ("the public interest in the fair and efficient distribution of assets in a bankruptcy is [ ] significant").

■ Appellants emphasize the presence of a forum selection and choice of law clause in the Indenture Agreement which selects New York as a forum and New York law to govern the agreement. Appellants contend that this clause indicates that the court abused its discretion in granting comity in favor of the Australian proceedings. The presence of such clauses, however, does not preclude a court from granting comity where it is otherwise warranted. *Kenner Prods. Co. v. Societe Fonciere et Financiere Agache–Willot*, 532 F.Supp. 478, 479–80 (S.D.N.Y.1982) (submission to jurisdiction of United States court did not override concerns of comity and judicial efficiency); *Cornfeld v. Investors Overseas Serv., Ltd.*, 471 F.Supp. 1255, 1260–61 (S.D.N.Y.) (dismissing action based on indemnity agreement against foreign bankrupt company on comity grounds despite clause in agreement selecting New York law), *aff'd*, 614 F.2d 1286 (2 Cir.1979).

We hold that the court did not abuse its discretion in dismissing appellants' actions against the Linter companies in recognition of the liquidation proceedings in Australia.

(B) *Claims Against The Individual Defendants*

■ Appellants also contend that the court improperly dismissed *Linter I* as to various individual defendants. While appellants correctly state that the court did not articulate a basis for dismissing as to these defendants, it cannot be said that the court abused its discretion where, as here, it would have been inefficient and inequitable to permit the individual claims to go forward. Indeed, since these individuals were sued solely because of their affiliation with the Linter companies, to allow these claims to go forward in the United States despite the dismissal as to the Linter companies would defeat the purpose of granting comity in the first place.

We hold that the court properly dismissed the claims against the individual defendants.

(C) *Forum Non Conveniens*

■ Appellants also contend that the court erred in dismissing *Linter II* as to the Banks on the ground of forum non conveniens. They assert that, in considering a motion to dismiss on the ground of forum non conveniens, "courts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion to deny a citizen access to the courts of this country." *Leasco Data Processing Equip. Corp. v. Maxwell*, 468

F.2d 1326, 1344 (2 Cir.1972) (citation omitted). Since our decision in *Leasco,* however, we have recognized that the reluctance to dismiss on the ground of forum non conveniens is not "as profound as the language [in *Leasco* and earlier cases] might suggest." *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 156 (2 Cir.) (en banc), *cert. denied,* 449 U.S. 890 (1980). Although there is still a strong presumption in favor of a plaintiff's choice of forum, the Supreme Court has recognized that dismissal nevertheless may be appropriate where certain private and public interest factors point towards trial in an alternative forum. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09 (1947); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1981).

The private and public interest factors recognized by the Court in *Gilbert* include: (1) the ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) practical problems involving the efficiency and expense of a trial; (5) enforceability of judgments; (6) administrative difficulties flowing from court congestion; (7) imposing jury duty on citizens of the forum; (8) the local interest in having controversies decided at home; and (9) the avoidance of unnecessary problems in the application of foreign law. *Gilbert, supra,* 330 U.S. at 508–09.

In reviewing the court's decision here, we are cognizant of the fact that it is well-settled law in this Circuit that we must "adher[e] to the simple uniform standard of *Gilbert* in all instances." *Alcoa, supra,* 654 F.2d at 153; *see also Borden, Inc. v. Meiji Milk Prods. Co.,* 919 F.2d 822, 827–28 (2 Cir.1990), *cert. denied,* 111 S.Ct. 2259 (1991). We will reverse only the court's dismissal of an action on the ground of forum non conveniens where "there has been a clear abuse of discretion." *Piper, supra,* 454 U.S. at 257; *Sussman v. Bank of Israel,* 990 F.2d 71, 72 (2 Cir.1993) (per curiam). Moreover, we will find such an abuse only where a court fails to "carefully consider[ ] the *Gilbert* factors." *Borden, supra,* 919 F.2d at 828.

Since we find that the court here carefully considered the factors set forth in *Gilbert,* we cannot say that it abused its discretion in

dismissing *Linter II* on the ground of forum non conveniens. After acknowledging the "high hurdle" that the Banks had to clear to obtain dismissal on the ground of forum non conveniens, the court proceeded to consider the *Gilbert* factors. Indeed, the court properly recognized that any judgment (whether by a United States or Australian court) will have to be enforced in Australia where all of the Banks' assets are located. Further, since all of the Banks' allegedly fraudulent activity occurred in Australia, most relevant documents are located there. *Calavo Growers of California v. Belgium,* 632 F.2d 963, 967 (2 Cir.1980) (location of documents a factor to be considered in forum non conveniens analysis), *cert. denied,* 449 U.S. 1084 (1981).

Most witnesses and other sources of proof are also located in Australia. Indeed, with the dismissal of the claims against the Linter companies (the primary perpetrators of the alleged fraudulent activity), many of their officers, directors and other key witnesses no longer are within the subpoena power of the federal court and therefore cannot be compelled to appear at trial in New York. Since their testimony as to what the Banks knew or intended regarding the contents of the prospectus is central to the case against the Banks, their unavailability is a factor favoring dismissal on the ground of forum non conveniens. *Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 451–52 (2 Cir.1975), *cert. denied,* 423 U.S. 1052 (1976). Further, where, as here, appellants have alleged fraud, live testimony of key witnesses is necessary so that the trier of fact can assess the witnesses' demeanor. *Schertenlieb v. Traum,* 589 F.2d 1156, 1165 (2 Cir.1978) (absence of live testimony a "very serious handicap" favoring dismissal on the ground of forum non conveniens).

The court also properly recognized that there are practical problems associated with trying this case in the United States. The cost of bringing witnesses to the United States for trial, assuming they are willing, would be prohibitive. Indeed, to try *Linter I* in Australia and *Linter II* in the United States would not only be costly but repetitive and, since much of the evidence would be the

same, would undermine "the economical use of judicial resources."

The dismissal of the Linter companies also eliminated the Banks' opportunity to pursue its cross-claims for contribution and indemnification. As the Supreme Court has recognized, the inability to implead other parties is a factor favoring dismissal on the ground of forum non conveniens. *Piper, supra,* 454 U.S. at 259. Here, if the trial is held in Australia the Banks will be able to assert their cross-claims simultaneously with appellants' action against them. As the court recognized, consolidating all claims in Australia avoids a situation where the Banks would have to pursue their cross-claims in Australia while defending against appellants' claims in the United States. Such a scenario not only represents a waste of judicial resources, but also creates a risk of inconsistent judgments.

While appellants are correct in asserting that United States courts have an interest in enforcing United States securities laws, this alone does not prohibit them from dismissing a securities action on the ground of forum non conveniens. *Howe v. Goldcorp Invests., Ltd.,* 946 F.2d 944, 950 (1 Cir.1991) (court recognized that securities actions are not immune from forum non conveniens dismissal), *cert. denied,* 112 S.Ct. 1172 (1992); *Lindner Fund, supra,* 143 B.R. at 810 ("deference may be given to foreign bankruptcy proceedings where the American suit is based on United States securities laws"). Further, since the liquidation here is one of the largest in Australian history and the actions undertaken by the Banks in furtherance of the alleged fraud were carried out in Australia by Australian corporations, there is a strong local interest in trying this case in Australia. *Lindner Fund, supra,* 143 B.R. at 809 & 810 (court dismissed securities action in favor of English proceedings, noting that the liquidation there was one of the largest in that country's history).

Since the court's careful consideration of the *Gilbert* factors supported its conclusion that Australia was the proper forum for appellants' actions, we hold that the court did not abuse its discretion in dismissing *Linter II* against the Banks on the ground of forum non conveniens.

### III.

To summarize:

We hold that the court did not abuse its discretion in dismissing appellants' actions on the grounds of comity and forum non conveniens.

Affirmed.