United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 20, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-11280

INTERNATIONAL TRANSACTIONS, LTD., A Cayman Islands Corporation,

Plaintiff-Appellant,

VERSUS

EMBOTELLADORA AGRAL REGIOMONTANA, SA DE CV; EMBOTELLADORA AGRAL
DE LA LAGUNA, SA DE CV; AGRAL ARRENDADORA, SA DE CV; AGRAL
COMISIONISTA Y DISTRIBUIDORA, SA DE CV; AGRAL IMMOBILIARIA, SA DE CV;
PEPSI-GEMEX, SA DE CV,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, SMITH and DUHÉ, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

International Transactions, Ltd. ("ITL") challenges the dismissal of its action to confirm

an arbitration award against Embotelladora Agral Regiomontana, S.A. de C.V.; Embotelladora

Agral De La Laguna, S.A. de C.V.; Agral Arrendadora, S.A. de C.V.; Agral Comisionista Y

Distribuidora, S.A. de C.V.; and Agral Immobiliaria, S.A. de C.V. (the "Agral Companies").

The district court dismissed the case based on its conclusion that ITL lacked standing to collect

the arbitration award based on an order of a Mexican bankruptcy court in the insolvency

proceedings of several of the Agral Companies. The Mexican bankruptcy court held that ITL's

representative, Sharp Capital, Inc. ("Sharp"), had assigned the award to a third party and Sharp

had released any interest it held in the award. The district court concluded that this decision was

entitled to comity and required dismissal of ITL's claims for lack of standing. Based on our

conclusion that the Agral Companies failed to demonstrate that ITL and/or Sharp was afforded

notice and an opportunity to be heard in the proceedings leading to the Mexican court's decision,

we vacate and remand.

I.

In May of 1994, ITL made an investment in one of the Agral companies, Embotelladora

Agral Regiomontana, S.A. de C.V. ("Embotelladora"), through Sharp, its undisclosed agent. The

form of the investment was a promissory note with Embotelladora as maker payable to

NationsBank of Texas, N.A. (the "Note"). NationsBank endorsed the Note to Sharp "as

custodian" without recourse. The remaining Agral Companies guaranteed the Note. ITL was not

identified as Sharp's principal and none of the parties knew ITL was involved in any way in the

investment. The Note contains an arbitration clause and choice of venue clause which requires

enforcement actions to be brought in Texas. The purpose of the loan was to fund the

construction of a Pepsi-Cola bottling plant in Monterrey, Mexico.

In 1996, Agral defaulted on the promissory note. Sharp, at ITL's direction, initiated

arbitration proceedings against the Agral Companies in Dallas, Texas, in accordance with the

provisions of the Note. On January 17, 1997, Sharp obtained an award against the Agral

Companies in the amount of $11,374,859, with interest accruing at the rate of 18% compounded

daily (the "Award"). ITL was not identified as the unnamed investor in the arbitration

proceedings and the Award was granted to Sharp, with no indication that Sharp received the Award as "custodian", "agent", or any other capacity, other than principal. However, the Agral Companies were aware that Sharp was acting for another because they had sought unsuccessfully to have the "unnamed and as of yet unidentified investor" added as a party to the arbitration proceedings in a suit filed in federal court in Texas.

In February 1997, four of the five Agral Companies filed for Suspension of Payments protection in Monterrey, Mexico, under Mexican law. The proceeding was later converted to a bankruptcy. At ITL's instruction, Sharp filed a claim in the bankruptcy proceeding for confirmation and recognition of the Award. Sharp's attorney was appointed as provisional intervenor for the creditors in the Agral bankruptcy. According to the Agral Companies, under Mexican law, the role of a provisional intervenor is to represent the creditors, similar to the function of a creditors' committee under U.S. bankruptcy law.

In August 1998, Sharp, without authority from ITL, assigned the Award and Note to Jose Trevino Canamar, a Mexican attorney, in exchange for an account of Bridgestone, Inc. and payment of Sharp's legal fees. ITL believes that Mr. Canamar is related to Sharp's president and is the brother of the attorney Sharp hired to collect the Award for ITL. Nine days later, Mr. Canamar assigned the Award and Note to Grupo Embotellador Norest, S.A. de C.V. ("GEN") in exchange for 55 million pesos, a fraction of the face value of the Award. GEN is an affiliate of the Agral Companies as they are all third-tier subsidiaries of defendant Pepsi-Gemex.[1] On the same day, Sharp, Canamar, and GEN executed a Master Agreement releasing all claims against

---

[1] ITL argues that Pepsi-Gemex is the alter ego or successor of the Agral Companies. Pepsi-Gemex filed a motion to dismiss for lack of jurisdiction that became moot by the district court's granting of the Agral Companies motion to dismiss.

each other and against the Agral Companies. Both assignments were duly notarized and ratified. At least the first assignment was also filed of record in Mexico.

Because of Sharp's fraudulent business practices, in November 1998, the Securities and Exchange Commission brought an action against Sharp and its president in the Northern District of Texas. A Special Master was appointed for Sharp. Sharp's president was indicted on fraud charges and later entered a guilty plea.

In January 1999, Sharp's claim in the Agral bankruptcy was denied. Based on the translation in the record, it appears that the ruling was without prejudice and based on the failure of Sharp to file the Award in a proper form, either a duly authenticated original or certified copy.

In February 1999, ITL filed suit against Sharp in the Northern District of Texas. In February 2001, in response to an order of the district court in that case, Sharp's Special Master conveyed the Award to ITL. ITL then sued the Agral Companies in the 68th Judicial District Court of Dallas County, Texas, seeking an order confirming the arbitration Award. In June 2001, the case was removed to the Northern District of Texas, Dallas Division.

In October 2001, GEN, the assignee of the Award, filed a motion in the Mexican bankruptcy proceeding to dismiss Sharp's attorney as provisional intervenor. GEN asked the court to dismiss Sharp's attorney from this role because Sharp, having assigned the Award away, was no longer a creditor of the Agral Companies. In a November 2001 ruling, presented in translation in the record along with the motion being ruled upon, the Mexican bankruptcy judge found that Sharp was no longer a creditor of any of the bankrupt parties. The basis of the ruling appears to be a finding that Sharp had assigned away the Award and that under the Assignments, GEN owned the Note and the Award. Since Sharp was no longer a creditor, its attorney was not

4

a proper provisional intervenor for the remaining creditors, so he was dismissed and a new intervenor appointed. The motion appears to have been handled on an *ex parte* basis. Although by the time the motion was filed the Agral Companies had notice of both ITL's claim to the Award and Sharp's fraudulent activities, ITL received no notice of and was not a party to the Mexican court's consideration of this motion. There is also no evidence in the record that Sharp, as ITL's representative in the Mexican bankruptcy, had any notice of the motion.

In December 2001, the Agral Companies were merged into GEN. The end result of the Assignments and the merger was that the debtor under the Award and the purported owner of the Award became one. The bankruptcy proceedings were dismissed in January 2002.

The Agral Companies submitted the November 2001 order of the Mexico bankruptcy court as basis for dismissal of this suit. They argued that ITL lacked standing to pursue collection of the Award because the Award had been assigned to GEN in 1998, and because applying the principles of *res judicata* and international comity, the 2001 order of the Mexican should be considered as conclusive on the question of ownership of the Award.

The district court granted the motion to dismiss for lack of subject matter jurisdiction for lack of standing on grounds of international comity. The court examined affidavits and other evidentiary materials submitted by the parties in making its ruling. After noting that standing requires an injury-in-fact, causation and redressability, the court found that ITL had sustained an injury-in-fact by its inability to collect the Award. In addressing the issue of redressability, it found that a judgment confirming the Award would not redress ITL's injury because (1) the Award had been assigned to Canamar and then to GEN, (2) Sharp, Canamar, and GEN released all claims against each other and the Agral Companies, and (3) the assignments were valid based

5

on the November 2001 decision of the Mexican bankruptcy court. ITL appeals.

## II.

The district court correctly identified the three requirements for Article III standing: (1) an injury-in-fact, which is a concrete invasion of a legally protected interest; (2) a causal connection between the injury and the defendants' conduct; and (3) a substantial likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). The Agral Companies argue that there are three bases on which ITL should be denied standing: (1) ITL's injury is not redressable because the relief it seeks, an order confirming the Award, will not help ITL because the Award was validly assigned to GEN; (2) ITL's injury is not redressable because an order confirming the Award will not help ITL in light of the Mexican court's finding that the Award was validly assigned to GEN, which decision is entitled to comity in this court; and (3) no causal relationship exists between the actions of the Agral Companies and the alleged injury, which is inability to collect the arbitration Award, because that harm was caused by Sharp by the first assignment to Canamar or by executing the Master Agreement.

The district court's decision to deny standing is reviewed *de novo*. Robison v. TCI/US West Communs., 117 F.3d 900, 904 (5th Cir. 1997). The court's decision to grant comity to the Mexican bankruptcy court's ruling is reviewed for abuse of discretion. Allstate Life Ins. Co. v. Linter Group, Ltd., 994 F.2d 996, 999 (2d Cir. 1993), *cert. denied*, 510 U.S. 945 (1994). The district court's decision to accept, under principles of comity, the Mexican bankruptcy court's finding that Sharp's assignment of the Award to Canamar and Canamar's assignment to GEN were valid is the focus of this appeal. We now turn to that issue.

6

III.

Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 163-64, 40 L. Ed. 95, 16 S. Ct. 139 (1895). The rationale underlying the grant of comity to a final foreign money judgment is similar to that underlying the application of *res judicata* to domestic judgments. Essentially, once the parties have had an opportunity to present their cases fully and fairly before a court of competent jurisdiction, the results of the litigation process should be final. Cunard S.S. Co. v. Salen Reefer Services AB, 773 F.2d 452, 457 (2d Cir. 1985); Moore's Federal Practice, § 131.11[1]. As applied to a bankruptcy proceeding, the extension of comity "enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion." Cunard, 773. F.2d at 457-58. Businesses, like ITL, that voluntarily deal with foreign entities impliedly subject themselves to the laws of the foreign government under which the corporation is organized which may affect the powers and obligations of that corporation. Id. at 458. While a foreign court may not render a binding money judgment against one over whom it has no jurisdiction based solely on one's dealings with a foreign corporation, a creditor of an insolvent foreign corporation may be required to assert its claims before a duly convened foreign bankruptcy tribunal to preserve claims against a foreign bankrupt. Id.

Under principles of international comity, a foreign court's judgment on a matter is conclusive in a federal court when (1) the foreign judgment was rendered by a court of competent jurisdiction, which had jurisdiction over the cause and the parties, (2) the judgment is supported

7

by due allegations and proof, (3) the relevant parties had an opportunity to be heard, (4) the foreign court follows procedural rules, and (5) the foreign proceedings are stated in a clear and formal record. Hilton, 159 U.S. at 159. Comity is an affirmative defense and the parties urging comity - the Agral Companies in this case - have the burden of proof on the issue. Allstate, 994 F.2d at 999. Although ITL challenges the district court's decision on comity on several grounds, the critical question is whether ITL had notice and an opportunity to be heard in the Mexican bankruptcy court on its claim to the Award. Answering that question requires an analysis of what type of notice is required for this purpose.

Under the law of the United States, a foreign judgment cannot be enforced in a U.S. court unless it was obtained under a system with procedures compatible with the requirements of due process of law. Hilton, 159 U.S. at 205-06, 16 S.Ct. at 159; Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1410 (9th Cir. 1995), *cert. denied*, 516 U.S. 989 (1995). Notice is an element of our notion of due process and the United States will not enforce a judgment obtained without the bare minimum requirements of notice. Ma v. Continental Bank, N.A., 905 F.2d 1073, 1076 (7th Cir. 1990), *cert. denied*, 498 U.S. 967 (1990). One commentator has stated the standard thus: "[t]he polestar is whether a reasonable method of notification was employed and reasonable opportunity to be heard was afforded to the person affected." Somportex, Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 443 (3d Cir. 1971), citing Restatement (Second) Conflict of Laws, § 92 (Proposed Final Draft), 1967.

While there is no requirement that Mexican law be identical to U.S. bankruptcy law, the notice requirements in our law give us some guidance as to what notice would satisfy our concept of due process. Allstate, 994 F.2d at 999. The U.S. Bankruptcy Code defines the phrase "after

8

notice and a hearing" and similar phrases as requiring such notice and hearings as are appropriate under the particular circumstances. 11 U.S.C. § 102(1)(A). These terms permit flexibility regarding the occasions in which a full hearing is required, while insuring that all persons who should have notice receive it. Collier on Bankruptcy, (15th ed.) ¶102.02. Parties in interest must receive notice and an opportunity to be heard before their interests may be adversely affected. Western Auto Supply Co. v. Savage Arms (In re Savage Indus.)., 43 F.3d 714, 720 (1st Cir. 1994). In addition, the flexible notice allowed by section 102(1)(A) does not allow *ex parte* relief in the absence of specific findings demonstrating that such action is appropriate under the circumstances. If an *ex parte* proceeding is deemed necessary, a reasonable effort is required to give advance notice to parties in interest. Collier on Bankruptcy, (15th ed.) ¶102.02[1], fn.6. ITL clearly qualifies as a party in interest, which class includes a creditor (like ITL), as well as any other person with a sufficient stake in outcome of a proceeding so as to require representation. In re Am. Appliance, 272 B.R. 587 (Bankr. D.N.J. 2002).

There is no dispute that ITL had notice of the Agral bankruptcy, both actual and constructive, through its agent Sharp. The Agral Companies argue that because ITL had notice of their bankruptcy proceeding, ITL cannot complain of lack of notice because it failed to file a claim. We disagree. Although ITL did not file a claim for the Award under its own name, it clearly did file a claim in the Agral bankruptcy through its agent, Sharp.

Even though neither Sharp nor ITL was given notice of the motion, the district court appeared to charge ITL with notice because ITL was aware of the pendency of the bankruptcy proceedings in which the motion was filed. ITL contends that it (either through Sharp or directly) was entitled to notice of the particular motion to dismiss Sharp's attorney as provisional

9

intervenor based on Sharp's assignment of the award. ITL's position is more consistent with our concept of due process and with case law on this issue. U.S. bankruptcy law speaks of notice to parties in interest in terms of notice of particular proceedings within the larger bankruptcy proceeding of the debtor. For example, Rule 3007 fixes requirements for notice of an objection to a claim. See also In re Bumper Sales, Inc., 907 F.2d 1430 (4th Cir. 1990)(Secured creditor's motion to condition use, sale, or lease of cash collateral and proceeds is "case" as term is used in 11 U.S.C.S. § 1109(b), rather than adversary proceeding; therefore, unsecured creditors' committee has standing to be heard.); Remington Rand Corporation v. Business Systems, Inc., 830 F.2d 1260 (3d Cir. 1987)(Parent corporation that did not file a claim in foreign bankruptcy proceedings of its subsidiary was not required to monitor activity in that case, including motion and order to sell assets of the debtor, to protect its rights to intellectual property licensed to the bankrupt sub.) We conclude that, having filed a claim in the Agral bankruptcy proceeding, ITL or Sharp was entitled to notice of GEN's motion to replace Sharp's attorney as provisional intervenor because a decision on that motion clearly would affect ITL's claim in the bankruptcy.

Under the facts of this case, we need not discuss the precise level of due process required to be given to ITL, as the record does not indicate that any notice was given. We see nothing in the record, the district court's opinion or any of the briefs which supports a conclusion that this motion was not handled, as ITL claims, on an *ex parte* basis.

We fully accept that ITL would be bound by notices issued in the bankruptcy proceeding to its agent, Sharp, and that ITL's obligation to act to preserve its rights did not stop with the filing of the claim by Sharp. No later than November 1998, ITL should have been on notice that Sharp could no longer be trusted to advance its interests since the SEC had appointed a Special

10

Master to oversee Sharp's affairs. ITL also had some notice, though perhaps not timely, of the January 1999 ruling in which the Mexican court denied Sharp's claim for lack of proof. In its Motion to Dismiss filed in this case in July 2001, the Agral Companies stated that "[t]he Mexican insolvency court has already ruled on Sharp Capital's application for enforcement of the arbitral award at issue here," referring to the January 1999 ruling on Sharp's claim. There is no indication in the record that ITL took any action in response to these facts to protect its claim before the Mexican bankruptcy court, for example by withdrawing Sharp's authority to act on its behalf or to substitute an alternative representative. However, based on the record before us, we cannot determine that any lack of diligence by ITL had any affect on the failure of the Mexican court to give notice of the motion to Sharp.[2] The Mexican court apparently signed the order removing Sharp as provisional intervenor *ex parte* without giving notice of GEN's motion to any interested party.

Accordingly, the Agral Companies have failed to meet their burden of proof that ITL was afforded an opportunity to be heard in the Mexican court on the issues underlying the motion to dismiss Sharp as intervenor that the Agral Companies seek to enforce in this court. In these circumstances, we conclude that the district court abused its discretion in accepting that ruling under principles of comity.

IV.

Based on the above outlined facts, the Agral Companies did not meet their burden of proof on the defense of comity, because they did not demonstrate that ITL (or its representative)

---

[2] We cannot say that notice to Sharp and its fraudulent principals would not have been transmitted to ITL. At the time the motion was filed, a special master appointed by the S.E.C. was in place to oversee Sharp.

11

was afforded notice and an opportunity to be heard on the motion to dismiss the provisional intervenor on grounds that ITL's agent validly assigned the Award. The district court abused its discretion in applying comity to the Mexican Bankruptcy court's order granting the motion and its implicit holding that ITL had no interest in the Award. The district court did not reach the alternative arguments of the parties and did not rule on whether the assignments were valid or on the Agral Companies' causation challenge to ITL's standing. The district court should consider these arguments including any factual issues necessary to resolve them in the first instance. Accordingly, we vacate the district court's judgment and remand this case to the district court for further proceedings consistent with this opinion.

VACATED and REMANDED.

JERRY E. SMITH, Circuit Judge, dissenting:

I respectfully dissent. Although this may be a fairly close question if examined *de novo*, by no stretch of the imagination did Chief Judge Fish abuse his discretion in granting comity to the decisions of the Mexican bankruptcy court.

The salient facts are these: In 1996, ITL had contemporaneous actual knowledge of Agral's default and of the arbitration. In 1997, ITL had contemporaneous actual knowledge of the award, of Agral's bankruptcy, and of Sharp's proof of claim in the Mexican bankruptcy court. ITL chose not to reveal itself but instead to rely on Sharp as its collection agent. ITL knew of Sharp's fraud no later than February 1999, when it joined the SEC's enforcement action, and probably by November 1998, when the SEC first sued Sharp.

ITL had and declined three opportunities to protect its ownership of the award in the Mexican bankruptcy court: (1) in February 1997, when it instructed Sharp to file its claim in that court; (2) in November 1998 or February 1999, when it joined the SEC's enforcement action; and (3) in June 2001, when it sued Agral in Texas state court to enforce the award. When, in October 2001, GEN asked the Mexican bankruptcy court to confirm its ownership of the award, GEN likely knew that ITL also claimed ownership and that Sharp no longer acted as ITL's agent.

The critical question on appeal is whether ITL had an oppor-

tunity to be heard in the Mexican bankruptcy court. Comity "is not a rule of law, but one of practice, convenience, and expediency." *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1148 (5th Cir. 1990). American federal courts should grant comity to a foreign court's decision where the foreign court had jurisdiction and used civilized procedures, its judgment was supported by due allegations and proof, the parties had an opportunity to be heard, and a grant of comity would not prejudice American interests. *Id.* (quoting *Hilton v. Guyot*, 159 U.S. 113, 205-06 (1895)). ITL does not seriously dispute any element other than its opportunity to be heard.[3]

ITL and Agral further reduce this dispute to when and on what ITL had an opportunity to be heard. ITL admits that it had multiple opportunities to be heard over the course of the Agral bankruptcy proceedings, but not on GEN's specific motion to confirm ownership of the award. Agral admits that ITL was not heard on GEN's motion, but disagrees that this fact matters on the issue of comity. Thus, the key issue is whether ITL had a right to be heard specifically on GEN's motion or just generally

---

[3] ITL asserts that GEN did not offer sufficient proof to support the Mexican bankruptcy court's decision, but the court based its decision on an uncontradicted affidavit. ITL also criticizes the procedures of the Mexican bankruptcy court. Insofar as ITL criticizes Mexican justice in general, American courts disagree. *See, e.g.*, *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671-72 (5th Cir. 2003); *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 383 (5th Cir. 2002); *In re Blackwell*, 267 B.R. 741, 758-59 (Bankr. W.D. Tex. 2001). Insofar as ITL criticizes the Mexican bankruptcy court's use of procedures in this particular case, that criticism relates to ITL's opportunity to be heard, not to the fairness of Mexico's procedural rules in general.

14

in the bankruptcy proceedings.[4]

There is essentially no law from the Fifth Circuit or other courts of appeals on this obscure question. We therefore must apply a fairly abstract standardSSan opportunity to be heardSSwithout much guidance from precedent. We should revert, however, to the purposes behind the *Hilton* test and specifically its opportunity-to-be-heard element. The test encourages respect for foreign courts (in hope of reciprocal respect), discourages protracted re-litigation of the same dispute, and ensures procedural fairness for the aggrieved party.[5]

With these purposes in mind, we should affirm the grant of comitySSand certainly should do so on the ground that the district court did not abuse its discretion. American courts often note the importance of extending comity to foreign bankruptcy courts, given the nature of insolvency proceedings.[6] Further, ITL (through Sharp or on its own behalf) and Agral have struggled over the note and then the award for seven years before an arbitrator, American courts, and Mexican courts.

---

[4] To summarize, whether ITL has standing depends on whether the district court properly granted comity to the Mexican bankruptcy court, which in turn depends on whether ITL had an opportunity to be heard, which ultimately depends on whether ITL has a right to be heard specifically on GEN's motion or just generally in the bankruptcy proceedings.

[5] *Finanz AG Zurich v. Banco Economico, S.A.*, 192 F.3d 240, 246 (2d Cir. 1999); *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 442-43 (3d Cir. 1971).

[6] *Allstate Life Ins. Co. v. Linter Group, Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993); *Overseas Inns*, 911 F.2d at 1149.

Finally, the grant of comity is not procedurally unfair to ITL. To be sure, ITL was not heard on GEN's motion. Yet, we should conclude, as did the district court, that this fact did not inflict a great injustice on ITL. In a sense, ITL was heard on the decisive question of its ownership of the award when the Mexican bankruptcy court denied Sharp's claim in January 1999.[7] Although the Mexican bankruptcy court dismissed Sharp's claim based on the 1998 assignments, it probably would have done the same based on the January 1999 decision as well.[8]

Moreover, ITL easily could have intervened in the Mexican bankruptcy proceedings at any time. Instead, it instructed Sharp to file the claim in February 1997, it sought to recover the award from Sharp in February 1999 in federal district court, and it sued Agral to enforce the award in June 2001 in Texas state court. In fact, after ITL sued Agral in June 2001, Agral repeatedly encouraged ITL to join the Mexican bankruptcy proceedings. ITL, after years of indolence and neglect, can hardly cry injustice now.

Nor does the fraud of Sharp excuse ITL. Although ITL reasonably might have relied on Sharp in February 1997, it certainly knew of Sharp's malefactions by November 1998 or February

---

[7] Even if Sharp had betrayed ITL by January 1999, ITL instructed Sharp to file a claim on behalf of ITL in February 1997, before any allegation was made against Sharp.

[8] *Cf. Banca Agricola Mantovana v. Farinacci (In re Enercons Va., Inc.)*, 812 F.2d 1469, 1472-73 (4th Cir. 1987) (affirming grant of comity to foreign bankruptcy court's earlier order notwithstanding a later *ex parte* order to similar effect).

1999, in plenty of time to protect its interests in the Mexican bankruptcy court.

In sum, the district court reasonably concluded that the *Hilton* test requires only an opportunity for ITL to be heard generally in the bankruptcy proceedings, not specifically on GEN's motion. Thus, the district court did not abuse its discretion by granting comity to the Mexican bankruptcy court's decision that ITL did not own the award or by therefore finding that a favorable decision would not redress ITL's injury.