21-1510-cv (L)
*Aenergy, S.A. v. Republic of Angola*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2021

No. 21-1510-cv (L); 21-1752 (Con)

AENERGY, S.A., COMBINED CYCLE POWER PLANT SOYO, S.A.,
*Plaintiffs-Appellants*,

v.

REPUBLIC OF ANGOLA, MINISTRY OF ENERGY AND WATER OF THE
REPUBLIC OF ANGOLA, MINISTRY OF FINANCE OF THE REPUBLIC OF
ANGOLA, EMPRESA PÚBLICA DE PRODUÇÃO DE ELECTRICIDADE, EP,
EMPRESA NACIONAL DE DISTRIBUIÇÃO DE ELECTRICIDADE, GENERAL
ELECTRIC COMPANY, GENERAL ELECTRIC INTERNATIONAL, INC., GE
CAPITAL EFS FINANCING, INC.,
*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: FEBRUARY 1, 2022
DECIDED: APRIL 13, 2022

Before: CABRANES, LYNCH, and NARDINI, *Circuit Judges.*

———

Plaintiffs Aenergy, S.A., and Combined Cycle Power Plant Soyo, S.A. (together, "AE"), sue various Angolan Government entities (together, "Angola"), plus General Electric Co. and related entities (together, "GE"). AE alleges that Angola wrongfully cancelled AE's Angolan power plant contracts and seized its related property in violation of state and international law. It further alleges that GE interfered with its contracts and prospective business relations in violation of state law. This case presents two questions. The first is whether standard principles of *forum non conveniens* apply to AE's lawsuit brought pursuant to exceptions to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605. We hold that they do. The second is whether the United States District Court for the Southern District of New York (John P. Cronan, *Judge*) abused its discretion in dismissing AE's Complaint on *forum non conveniens* grounds. We hold that it did not. Accordingly, we **AFFIRM** the orders of the District Court.

———

VINCENT LEVY (Gregory Dubinsky, Brian T. Goldman, *on the brief*), Holwell Shuster & Goldberg LLP, New York, NY, *for Plaintiffs-Appellants*.

2

MICHAEL D. EHRENSTEIN (Latasha Johnson, *on the brief*), Ehrenstein Sager, Coral Gables, FL (Marc R. Rosen, Robert M. Tuchman, Kleinberg, Kaplan, Wolff & Cohen, P.C., New York, NY, *on the brief*), *for Defendants-Appellees Republic of Angola, Ministry of Energy and Water of the Republic of Angola, Ministry of Finance of the Republic of Angola, Empresa Pública De Produção De Electricidade, EP, and Empresa Nacional De Distribuição De Electricidade.*

THOMAS H. DUPREE, JR. (Samuel Liversidge, Ilissa Samplin, Daniel Nowicki, *on the brief*), Gibson, Dunn & Crutcher LLP, Washington, DC, *for General Electric Company, General Electric International, Inc., and GE Capital EFS Financing, Inc.*

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiffs Aenergy, S.A., and Combined Cycle Power Plant Soyo, S.A. (together, "AE"), sue various Angolan Government entities (together, "Angola"), plus General Electric Co. and related entities (together, "GE"). AE alleges that Angola wrongfully cancelled AE's Angolan power plant contracts and seized its related property in violation of state and international law. It further alleges that GE

interfered with its contracts and prospective business relations in violation of state law.  This case presents two questions.  The first is whether standard principles of *forum non conveniens* apply to AE's lawsuit brought pursuant to exceptions to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605.[1]  We hold that they do.  The second is whether the United States District Court for the Southern District of New York (John P. Cronan, *Judge*) abused its discretion in dismissing AE's Complaint on *forum non conveniens* grounds.  We hold that it did not.  Accordingly, we **AFFIRM** the orders of the District Court.

## I. BACKGROUND

"The factual recitation here, while primarily taken from the complaint, is supplemented with information from affidavits."[2]  AE is an Angolan energy company owned by a Portuguese citizen, Ricardo Machado.  Beginning in 2013, AE  worked with GE to construct and service electricity-generating facilities in Angola.  In August 2017, Angola[3] awarded AE thirteen contracts totaling $1.1 billion.  To pay,

---

[1] *See infra* note 8.

[2] *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 697 n.1 (2d Cir. 2009).

[3] Specifically its state-owned electricity companies Empresa Pública De Produção De Electricidade, EP ("PRODEL") and Empresa Nacional De Distribuição De Electricidade ("ENDE"), both defendants in this action.

4

Angola[4] secured a $1.1 billion credit facility from GE's affiliate,[5] of which $644 million was disbursed in December 2017. The contracts required AE to provide power plant services and to sell Angola eight GE-manufactured turbines. Around the same time, AE entered into various service contracts with GE[6] and bought 14 turbines from GE—six more than the eight turbines called for in the contracts with Angola.

GE mistakenly thought that 12 of these turbines would be promptly sold by AE to Angola. As a result, GE over-estimated the extent to which the $1.1 billion credit facility issued by its affiliate would be used to pay GE itself—an error with serious accounting consequences. While Angola considered AE's proposal on behalf of GE to amend the contracts to include 12 rather than eight turbines, Wilson da Costa—CEO of GE's Angola business—fabricated letters indicating that Angola had already approved the change, which he and Leslie Nelson—the head of GE's sub-Saharan Africa business—distributed to other GE employees. Angola[7] subsequently rejected AE's proposed amendment to the contracts.

---

[4] Specifically its Ministry of Finance of the Republic of Angola ("MINFIN"), a defendant in this action.

[5] Specifically GE Capital EFS Financing, Inc. ("GE Capital"), a defendant in this action.

[6] Including with GE International, Inc. ("GE International"), a defendant in this action.

[7] Specifically the Ministry of Energy and Water of the Republic of Angola ("MINEA"), a defendant in this action.

Several months later, da Costa presented the forged letters to Angolan officials, and GE subsequently maintained that the $644 million disbursement had in fact paid for 12 turbines, not eight as reflected in Angola's contracts with AE. As a result, on September 2, 2019, Angola—pointing to purported irregularities related to the four disputed turbines—terminated its contracts with AE in favor of contracting with GE directly. AE appealed this decision, and the record indicates that the Supreme Court of Angola has received briefing. On October 4, 2019, Angola initiated a civil suit in Luanda Provincial Court to restrain the four turbines. After holding an *ex parte* injunction hearing, the Luanda Provincial Court preliminarily restrained the turbines. AE alleges that Angola's state-owned electricity companies—not the court-designated custodian—now possess the turbines and have moved them to a power plant facility.

AE filed its Complaint in the District Court on May 7, 2020. AE alleges that Angola—which AE sues under exceptions to the Foreign Sovereign Immunities Act ("FSIA")[8]—breached its contract and took

---

[8] The FSIA provides in relevant part that:

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign

6

AE's turbines in violation of New York state and international law. AE further alleges that GE tortiously interfered with AE's contracts and prospective business relations in violation of New York state law. After briefing, oral argument, and post-argument letter briefing, the District Court on May 19, 2021, conditionally dismissed AE's Complaint on *forum non conveniens* grounds, finding that the courts of Angola would be a more "convenient" forum.[9]  On June 24, 2021, the District Court removed the conditions, and dismissed the case.  AE timely appealed both orders.

## II. DISCUSSION

AE argues as to Angola that *forum non conveniens* dismissal is unavailable—or, at least, the standard for dismissal must be higher—

---

state elsewhere and that act causes a direct effect in the United States;

(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States . . . .

28 U.S.C. § 1605(a).  We assume without deciding that AE's jurisdictional claims are correct.  *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter . . . jurisdiction . . . .").

[9] *See Aenergy, S.A. v. Republic of Angola*, No. 20-CV-3569, 2021 WL 1998725 (S.D.N.Y. May 19, 2021).

7

where a claim is brought against a foreign state under an exception to the FSIA.  AE argues as to GE, and alternatively as to Angola, that the District Court erred or "abused its discretion" in dismissing the Complaint on *forum non conveniens* grounds.  We consider and reject each of AE's arguments.

### A.  Standard *Forum Non Conveniens* Principles Apply to AE's Claims Under the FSIA

AE argues that "[t]he FSIA does not permit application of standard [*forum non conveniens*] doctrine."[10]  To support its position, AE points out that the FSIA is designed to give foreign states "some protection from the inconvenience of suit as a gesture of comity."[11]  Because Congress has already considered convenience to foreign states, and "the central focus of the *forum non conveniens* inquiry is convenience,"[12]  AE argues that applying *forum non conveniens* principles here would upset the careful balance struck by Congress.

---

[10] Pls.' Br. 20.  It is arguable that AE waived this argument below by noting it only in a footnote and "solely for preservation purposes."  *See* Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss at 51 n.50, *Aenergy, S.A. v. Republic of Angola*, No. 20-CV-3569, Dkt. No. 79 (S.D.N.Y. Nov. 2, 2020); *cf. United States v. Svoboda*, 347 F.3d 471, 480 (2d Cir. 2003) ("[W]e do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review." (citation omitted)).  We assume without deciding that AE waived this argument, but exercise our discretion to address its merits.  *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) ("[T]his court has discretion to consider arguments waived below because our waiver doctrine is entirely prudential.").

[11] *Dole Food Co. v. Patrickson*, 538 U.S. 468, 479 (2003).

[12] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981).

We reject AE's argument. Initially, it is inconsistent with the principle articulated by the Supreme Court that the FSIA "does not appear to affect the traditional doctrine of *forum non conveniens*."[13] While we have not squarely decided the issue after briefing, our holdings have assumed that this principle is an accurate and valid statement of the law. We cited it explicitly in affirming a conditional dismissal on *forum non conveniens* grounds and noted that "[t]he traditional doctrine of *forum non conveniens* is still applicable in cases arising under the FSIA."[14] And we implicitly assumed its validity in at least two other cases, where we found proper the *forum non conveniens* dismissal of complaints brought under an exception to the FSIA.[15]

This approach is sensible, as the principles underlying the *forum non conveniens* doctrine apply with equal weight—indeed, in some cases perhaps with greater weight—to lawsuits against foreign states. For example, it may be inconvenient for a foreign state to retain competent counsel, submit to pre-trial discovery, and produce its

---

[13] *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 490 n.15 (1983).

[14] *Blanco v. Banco Indus. de Venez., S.A.*, 997 F.2d 974, 977 (2d Cir. 1993) (italics added) (brackets omitted) (quoting *Proyecfin de Venez., S.A. v. Banco Indus. de Venez., S.A.*, 760 F.2d 390, 394 (2d Cir. 1985)).

[15] *See Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 393 (2d Cir. 2011); *In re Arb. between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 501 (2d Cir. 2002).

officials for trial in U.S. courts.[16] While a United States jury may have little or no relation to disputes involving a foreign state,[17] there may be a strong interest in resolving claims brought against a foreign state in that state's courts, particularly when the allegations relate to the state's domestic conduct.[18] And litigation involving foreign states may require applying foreign law.[19] These general principles, while not applicable to every lawsuit involving a foreign sovereign, suggest that the *forum non conveniens* doctrine remains useful in the FSIA context as a "tool that helps prevent this country's judicial system from becoming the courthouse to the world, or an international court of claims."[20]

None of AE's arguments to the contrary are persuasive. *Forum non conveniens* does not require a case-by-case consideration of comity, and therefore is consistent with the FSIA's purpose in establishing a

---

[16] *Cf. Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (indicating in the qualified immunity context that standing trial and participating in pretrial discovery "can be peculiarly disruptive of effective government" (citation omitted)).

[17] *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001) (en banc).

[18] *Cf. Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) (finding "a strong local interest in trying [a] case in Australia" because it involved "one of the largest [liquidations] in Australian history and the actions undertaken by the Banks in furtherance of the alleged fraud were carried out in Australia by Australian corporations").

[19] *Scot. Air Int'l, Inc. v. Brit. Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996) ("When deciding a *forum non conveniens* motion, a court may properly rely on the difficulties attending the resolution of questions of foreign law.").

[20] *Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 158 F. Supp. 2d 377, 382 (S.D.N.Y. 2001), *aff'd*, 311 F.3d 488 (2d Cir. 2002).

"comprehensive set of legal standards."[21]  The fact that the FSIA gave foreign states "some protection from the inconvenience of suit as a gesture of comity"[22] does not suggest that Congress intended by statute to override the common law principles of *forum non conveniens*,[23] as the doctrine counsels a broader inquiry into a venue's convenience for all parties and the public.[24]  Nor does applying traditional *forum non conveniens* principles necessarily allow foreign sovereigns to "avoid accountability even where Congress dictated otherwise,"[25] as the availability of an adequate alternative forum is required for *forum non conveniens* dismissal.[26]  Finally, *Wiwa v. Royal Dutch Petroleum Co.*[27] does not control here.  In *Wiwa,* we held only that "suits should not be facilely dismissed . . . unless the defendant has fully met the burden of showing that the [factors identified in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)] tilt strongly in favor of trial in the

---

[21] *Republic of Arg. v. NML Cap., Ltd.*, 573 U.S. 134, 141 (2014) (citation omitted).

[22] *Dole Food*, 538 U.S. at 469.

[23] *See Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 607 (2d Cir. 1998) (noting that *forum non conveniens* is a "common law doctrine" that may be "supplanted" by statute).

[24] *See Iragorri*, 274 F.3d at 73–74 (discussing factors that indicate the convenience to the litigants and the public interest in the dispute).

[25] *Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808, 819 (2d Cir. 2021).

[26] *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74–75 (2d Cir. 2003).

[27] 226 F.3d 88 (2d Cir. 2000).

foreign forum."[28]  *Wiwa* thus does not suggest, much less support, AE's thesis that *forum non conveniens* has no place or a lesser place in FSIA cases.

**B.    The District Court Did Not Abuse Its Discretion in Dismissing AE's Complaint on *Forum Non Conveniens* Grounds**

AE argues that the District Court erred in applying the familiar three-step *forum non conveniens* analysis set forth in the unanimous en banc decision in *Iragorri v. United Technologies Corp*.[29]  The three steps are "(1) determine the degree of deference properly accorded the plaintiff's choice of forum; (2) consider whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute; and (3) balance the private and public interests implicated in the choice of forum."[30]

We "begin with the assumption that [AE's] choice of forum will stand unless the defendant[s] meet[] the burden of demonstrating" that the three-step analysis favors dismissal.[31]  At the same time, *forum non conveniens* dismissal "lies wholly within the broad discretion of the [D]istrict [C]ourt and may be overturned only when we believe that

---

[28] *Id*. at 106 (brackets, citation, and internal quotation marks omitted).

[29] *See generally* 274 F.3d 65.

[30] *Celestin v. Caribbean Air Mail, Inc.*, --- F.4th ----, No. 20-1412, 2022 WL 963959, at *9 (2d Cir. 2022) (brackets, citation, and internal quotation marks omitted).

[31] *Iragorri*, 274 F.3d at 71.

12

discretion has been clearly abused."[32]  A district court has "abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions."[33]

### 1. Degree of Deference

In the circumstances presented here the District Court did not err in affording minimal deference to AE's forum choice.

First, the District Court reasonably afforded "less deference" to the United States forum choice of AE—an entity incorporated in Angola—because it is a "foreign plaintiff."[34]

Second, the District Court did not err in finding that AE and its lawsuit lacked a "bona fide connection to the United States and to the forum of choice."[35]  Apart from a December 2017 receipt of funds disbursed by GE's affiliate—a transfer not at issue in the Complaint that occurred more than a year before Angola terminated AE's contracts—AE has "offered no proof that [it has] connections to the United States and failed to demonstrate that New York is convenient

---

[32] *Id.* at 72 (citation and emphasis omitted).

[33] *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (brackets, citations, and internal quotation marks omitted).

[34] *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005).

[35] *Iragorri*, 274 F.3d at 72 (footnote omitted).

13

for [it]."[36]  The District Court thus properly concluded that it does not appear "that considerations of convenience favor the conduct of the lawsuit in the United States."[37]

We find unpersuasive in this context AE's lead argument on appeal: that the District Court erred by dismissing its complaint on *forum non conveniens* grounds after holding that New York "would be relatively convenient for [GE] since [it is] either at home here or in a nearby district."[38]  We have declined to assign "a plaintiff's choice of forum . . . presumptive deference simply because the chosen forum is [a] defendant's home forum," especially where the selection "suggests the possibility that [the] plaintiff's choice was made for reasons of trial strategy."[39]  Caution was particularly apt here, where many of the contracts at issue specify that disputes will be heard in an Angolan arbitral forum—a fact that "modifies" *forum non conveniens* doctrine so that the "usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum."[40]

---

[36] *Pollux*, 329 F.3d at 74 (affording minimal deference based on "only a faint connection to the United States" where the plaintiffs' "interactions with [the defendant] were centered in [the alternate forum]").

[37] *Iragorri*, 274 F.3d at 72.

[38] *Aenergy*, 2021 WL 1998725, at *9.

[39] *Pollux*, 329 F.3d at 74.

[40] *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019) (brackets and citation omitted).

14

Third, the District Court's finding that AE's decision to file suit here while pursuing similar claims abroad "smacks of forum shopping"[41] was not "a clearly erroneous finding of fact."[42] Plaintiffs are entitled to less deference "the more it appears that [their] choice of a U.S. forum was motivated by forum-shopping reasons."[43] We have stated that one indication of forum shopping is "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case."[44] Here, the District Court had ample basis to find that AE sought a tactical advantage in New York, as AE "first chose a different forum to litigate the termination of the AE-MINEA Contracts: Angola[,] . . . [and] thus far, AE has not found success in those Angolan proceedings."[45]

---

[41] *Aenergy*, 2021 WL 1998725, at \*10.

[42] *Pollux*, 329 F.3d at 70.

[43] *Iragorri*, 274 F.3d at 72.

[44] *Id*.

[45] *Aenergy*, 2021 WL 1998725, at \*10. Two other Courts of Appeals have held that filing suit here while pursuing claims abroad may support a factual finding of forum shopping. *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 695 (9th Cir. 2009) (holding that "the district court did not abuse its discretion when it concluded that [the plaintiff] was engaging in forum shopping by filing suit in the United States" in light of "the actions [the plaintiff] ha[d] filed across Europe"); *Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 102–03 (1st Cir. 2009) (same, where the plaintiff "engaged in nearly four years of discovery in an Israeli forum—a forum it initially chose—and . . . subsequently moved to dismiss its suit 'on the verge of being ready for trial'" (footnote omitted)).

Nor was the District Court's decision "an error of law,"[46] as courts in this Circuit are not required to discount parallel litigation in assessing whether a plaintiff is forum shopping. AE cites several cases that decline to consider parallel litigation while balancing the private interest factors identified by the Supreme Court in *Gilbert*.[47] But the *Gilbert* factors relate to "the convenience of the litigants,"[48] not a plaintiff's "reasons" for selecting a particular forum, which is at the heart of the forum shopping inquiry.[49] AE's reliance on *Bigio v. Coca-Cola Co.*[50] is likewise misplaced because there, unlike here, the district court did not find that the plaintiffs were forum shopping.[51]

In sum, the District Court did not err in affording minimal deference to AE's choice of a New York forum.

---

[46] *Pollux*, 329 F.3d at 70.

[47] *See, e.g.*, *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 31 (2d Cir. 2002) (holding that "related litigation" involving a different class of plaintiffs was due "little weight" in applying the *Gilbert* convenience factors); *Peregrine Myan. Ltd. v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996) (holding that a parallel suit brought by the same plaintiff against different defendants in Hong Kong did not suggest that a United States venue was inconvenient).

[48] *Iragorri*, 274 F.3d at 73.

[49] *Id.* at 72.

[50] 448 F.3d 176 (2d Cir. 2006).

[51] *See generally Bigio v. Coca-Cola Co.*, No. 97-CV-2858, 2005 WL 287397, at *2 (S.D.N.Y. Feb. 3, 2005).

## 2. *Adequate Alternative Forum*

"An alternative forum is adequate [1] if the defendants are amenable to service of process there, and [2] if it permits litigation of the subject matter of the dispute."[52] AE argues that Angola does not "permit[] litigation"[53] because (1) AE's contract damages claim is time-barred in Angola, (2) AE could not have its claims against Angola and GE tried in the same Angolan court, and (3) Angola provides inadequate due process.[54]

AE first argues that it is jurisdictionally time-barred in Angola from seeking breach of contract damages from Angola. We assume without deciding that AE's expert has correctly interpreted Angolan law. "In rare circumstances, . . . where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative."[55] However, "the availability of an adequate alternative forum does not depend on the existence of the identical

---

[52] *Pollux*, 329 F.3d at 75.

[53] Pls.' Br. 38.

[54] AE also argues that Angola is inadequate because AE's owner, Machado, cannot travel there to testify due to safety concerns. This argument is unrelated to whether Angola "permits litigation of the subject matter of the dispute." *Pollux*, 329 F.3d at 75. It suggests instead that Angola is an inconvenient forum, *see Iragorri*, 274 F.3d at 75, and AE argued as much below. We thus consider this argument as part of the *Gilbert* analysis.

[55] *Piper*, 454 U.S. at 254 n.22.

17

cause of action in the other forum, nor on identical remedies."[56]  Nor does "the prospect of a lesser recovery . . . justify refusing to dismiss on the ground of *forum non conveniens*,"[57] provided that "the essential subject matter of the dispute can be adequately addressed" by the foreign court.[58]

Notwithstanding the asserted unavailability of breach of contract damages against Angola, the District Court did not err in holding that these are not examples of "rare circumstances" where the remedies afforded by a foreign forum can be said to be inadequate. The District Court correctly noted that AE brings "eight [other] claims" against both Angola and GE.[59]  And even if AE cannot recover damages on its breach of contract claim against Angola, it has sought equitable contract remedies in Angola,[60] allowing the Angolan court to address the essential subject matter of the dispute.

AE next argues that Angola and GE cannot be tried in the same Angolan court.  While Angola and GE contest this position, we assume

---

[56] *Norex*, 416 F.3d at 158 (brackets, citation, and internal quotation marks omitted).

[57] *Alcoa S. S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 159 (2d Cir. 1980) (en banc) (italics added) (affirming dismissal where the plaintiff in Trinidad could "recover only $570,000 rather than $8,000,000").

[58] *Cap. Currency Exch.*, 155 F.3d at 610–11.

[59] *Aenergy*, 2021 WL 1998725, at *13.

[60] *See* App'x 592 (quoting AE's prayer in the Supreme Court of Angola that the contracts "should be considered in force").

without deciding that AE's claims against Angola would proceed in the Supreme Court of Angola, while its claims against GE would proceed in Luanda Provincial Court.

This does not suggest that Angola is an inadequate alternative to New York. This conclusion finds support in *Olympic Corp. v. Societe Generale*.[61] There, a U.S. corporation filed a complaint against a French bank, which in turn filed a third-party complaint against a French company.[62] We reversed the district court's *forum non conveniens* dismissal as to the complaint, but affirmed as to the third-party complaint, holding in effect that courts in different countries were adequate to resolve related disputes.[63] Our statement that "a court must satisfy itself that the litigation may be conducted elsewhere against all defendants"[64] thus does not require a single foreign court.[65]

Finally, AE argues that Angola's judiciary will not provide due process. It points specifically to the seizure of its turbines and

---

[61] 462 F.2d 376 (2d Cir. 1972).

[62] *Id*. at 377–78.

[63] *Id*. at 379–80.

[64] *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998).

[65] The ability to try related claims in one courtroom may relate to the convenience of a foreign venue. *See Piper*, 454 U.S. at 259 ("It would be far more convenient . . . to resolve all claims in one trial."). But AE does not raise, and has thus waived, any argument that the *Gilbert* factors favor joinder. *See Frank v. United States*, 78 F.3d 815, 833 (2d Cir. 1996) ("Issues not sufficiently argued are in general deemed waived and will not be considered on appeal."), *judgment vacated on other grounds*, 521 U.S. 1114 (1997).

equipment pursuant to an order issued after an *ex parte* hearing, and subsequent transport of two of its turbines to a state-owned power facility.[66] A finding of a "lack of due process in the foreign forum" may support a finding that that forum is not adequate.[67] "[W]hile the plaintiff bears the initial burden" of production in this regard, "the defendant bears the ultimate burden of persuasion as to the adequacy of the forum."[68] To make such an initial showing, plaintiffs must demonstrate "inadequate procedural safeguards."[69] "[S]uch a [showing] is rare,"[70] because "it is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation."[71]

The District Court properly held that AE had failed to meet its initial burden of production, concluding that seizure pursuant to an *ex parte* hearing did not "render[] a judicial system inadequate"; indeed "courts in this country hold *ex parte* hearings in appropriate circumstances."[72] This holding reasonably characterized both our

---

[66] While AE before the District Court referred to State Department and other reports describing corruption in Angola, it does not raise these reports on appeal. Accordingly, we do not consider them. *See Frank*, 78 F.3d at 833.

[67] *See Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

[68] *Id.*

[69] *PT United*, 138 F.3d at 73.

[70] *Id.*

[71] *Blanco*, 997 F.2d at 982 (brackets and citation omitted).

[72] *Aenergy*, 2021 WL 1998725, at *13.

20

judicial process[73] and that of Angola, where AE does not dispute that the court has ordered only preliminary relief, and where permanent relief requires an adversary process of the sort now underway.[74] AE likewise does not dispute that the Angolan judiciary is independent from the executive branch. AE's argument that the seized turbines "went . . . to state-owned power companies that have since deployed them,"[75] suggests at most that the Angolan court's trustee has failed to fulfill its obligations. AE has proffered no evidence that Angola's courts cannot in appropriate circumstances address this asserted failure. Nor has it proffered evidence that the Angolan court "secretly gave [the turbines] to [Angola],"[76] or committed any other impropriety.

Relatedly, the District Court did not err in finding "relevant" AE's "decision to do business in Angola."[77] We agree that it is "anomalous" for AE—an Angolan corporation—to enter into multiple contracts worth more than a billion dollars with the Angolan

---

[73] *See, e.g.*, Fed. R. Civ. P. 65(b) (authorizing *ex parte* temporary restraining orders in limited circumstances).

[74] *See* App'x 190 (Angola's expert declaration stating that the property was seized as a "temporary ex-parte provisional remed[y]," and that "title to the property remains with [AE] pending final adjudication of the [P]arties competing rights"), 588 (AE's expert declaration stating that Angola and AE have filed papers related to a "plenary process," which is required for Angola to obtain permanent relief).

[75] *See* Pls.' Br. 44.

[76] *See* Pls.' Reply 27.

[77] *Aenergy*, 2021 WL 1998725, at *15.

government, subject to Angolan law and adjudication in many cases in an Angolan forum, and "then [to] argue to an American court that the [Angolan] system of justice is so . . . corrupt as not to provide an adequate forum for the resolution of . . . contractual disputes."[78]

We conclude that the District Court did not err in finding that Angola is an adequate alternative forum.

### 3. Gilbert *Factors*

"[E]ven where the degree of deference [to a foreign plaintiff's choice of forum] is reduced [at step one], the action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."[79]  To assess this issue, we consider private and public interest factors.  With respect to the private interest factors, we assess "the relative ease of access to sources of proof; [the] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [the] possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."[80]  With respect to public interest factors, we consider "administrative difficulties associated with court congestion; the unfairness of imposing jury duty

---

[78] *Blanco*, 997 F.2d at 981.

[79] *Bigio*, 448 F.3d at 179 (brackets, citation, and internal quotation marks omitted).

[80] *Iragorri*, 274 F.3d at 73–74 (quoting *Gilbert*, 330 U.S. at 508).

22

on a community with no relation to the litigation; the interest in having localized controversies decided at home; and avoiding difficult problems in conflict of laws and the application of foreign law."[81]

The District Court did not err by holding that the *Gilbert* factors suggest that New York is genuinely inconvenient and Angola is significantly preferable.

Concerning the private interest factors, the District Court reasonably held that Angola offers greater "relative ease of access to sources of proof."[82] All of the key events occurred in Angola. This includes the fabrication of letters indicating Angola's agreement to buy more turbines, GE's insistence that the contracts had been amended, and the Angolan President's termination of the contracts. By contrast, the disbursement of funds in New York by GE's affiliate is not in dispute. And GE's United States-based employees are unlikely to be crucial witnesses, as they are alleged only to have "rel[ied] on" and received "report[s]" and "update[s]" from GE's employees in Angola.[83]

The District Court did not err in holding that "[t]he Angolan government is at the heart of this case" and giving priority to the availability of "Angolan state officials."[84] In light of their official roles,

---

[81] *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 480 (2d Cir. 2002).

[82] *Aenergy*, 2021 WL 1998725, at *17.

[83] Compl. ¶¶ 109, 162, 164.

[84] *Aenergy*, 2021 WL 1998725, at *17.

it is "unlikely that many would be willing to travel to New York to testify; and the cost, in any event, would be prohibitively great."[85] We disagree with AE's argument that the testimony of Angolan government witnesses does not meaningfully bear on "the precise issues that are likely to be actually tried."[86] To the contrary, these witnesses may offer testimony on important topics, including GE's alleged efforts to convince Angola to allow it to take over AE's contracts and the basis and good faith of Angola's alleged claim of contractual irregularities. Moreover, AE's initial disclosures list 36 witnesses affiliated with the Angolan government, which is inconsistent with its claim that such witnesses are irrelevant.

The District Court likewise did not err in concluding that translating "testimony from non-English speaking witnesses (or those that . . . would prefer to testify in another language) . . . would be a costly, difficult endeavor."[87] Translation for Angolan state officials who prefer to testify in their country's official language (Portuguese) "would result in significant cost to the parties and delay to the court," which "militates strongly in favor of [Angola] as a more appropriate forum for this litigation."[88] The same is true of many "relevant documents"—including the contracts at issue and related written

---

[85] *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451–52 (2d Cir. 1975).

[86] *Iragorri*, 274 F.3d at 74.

[87] *Aenergy*, 2021 WL 1998725, at *18.

[88] *Blanco*, 997 F.2d at 982.

communications that would require translation from Portuguese to English."[89]

The District Court reasonably evaluated the potential testimony of specific witnesses. Regarding da Costa and Nelson—the former CEO of GE's Angola business and the former head of GE's sub-Saharan Africa business, respectively, and "two witnesses that all parties seem to agree would be essential at trial"—the District Court found it "far from certain"[90] that either would be subject to a subpoena as "a national or resident of the United States [who is in a foreign country]."[91] This was not a clearly erroneous assessment of the evidence. Da Costa may not be a U.S. resident, as his green card appears to have expired in 2019. Indeed, the record suggests that he may be an Angolan citizen residing in Angola. In any case, it is unclear whether a U.S. subpoena could be served upon or enforced against either da Costa or Nelson. And even assuming that da Costa and Nelson could be made available in New York, the District Court did not abuse its discretion in giving priority to the testimony of "officials from the Angolan government,"[92] as discussed.

---

[89] *Aenergy*, 2021 WL 1998725, at *18.

[90] *Id*. at *17 n.7.

[91] *Id.* (quoting 28 U.S.C. § 1783(a)). Under some circumstances "[a] court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country." 28 U.S.C. § 1783(a).

[92] *Aenergy*, 2021 WL 1998725, at *17 n.7.

The same is true of AE's owner, Machado—"an important witness in this action" who claims he cannot testify in Angola due to "grave security concerns."[93]  It is of course true that a witness's "fear for [his] safety" is "relevant to the balancing inquiry."[94]  But the District Court reasonably discounted these concerns because Machado's company, AE, continues to seek reinstatement of its Angolan contracts.[95]  Even "assum[ing] [that] Machado's fears are legitimate," the District Court did not abuse its discretion in holding that "because all other private interest factors weigh in favor of dismissal, . . . such fears [do not] tip the balance in a meaningful way."[96]

Regarding the public interest factors, the District Court correctly held that "[t]his case has little to do with New York and a lot to do with Angola."[97]  As discussed, AE has not put at issue the alleged transfer of funds in New York, and GE's United States-based employees are alleged principally to have relied upon and received reports from GE's employees in Angola.  While the United States has an interest in regulating its corporate citizens in this case, that interest

---

[93] *Id.* at *19.

[94] *Iragorri*, 274 F.3d at 75.

[95] *Aenergy*, 2021 WL 1998725, at *19.

[96] *Id.*

[97] *Id*.

26

is relatively limited, and Angola has a significantly stronger interest in addressing disputes related to its government contracts.[98]

Finally, the District Court reasonably concluded that this case would require it "to confront 'difficult problems in conflict of laws and the application of foreign law.'"[99]  As discussed, the contracts at issue are subject to Angolan law.  The District Court properly held that this suggests that Angola is a superior forum.[100]

In sum, the District Court reasonably found that AE's forum choice was entitled to minimal deference; that Angola is an adequate alternative forum; and that the public and private *Gilbert* factors favor Angola.  The District Court thus did not err in dismissing AE's complaint under the doctrine of *forum non conveniens*.

## CONCLUSION

To summarize, we hold as follows:

(1) Standard principles of *forum non conveniens* apply to AE's lawsuit brought pursuant to an exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605; and

---

[98] *See Allstate*, 994 F.2d at 1002 (Australia had a stronger interest to resolve "one of the largest [liquidations] in Australian history," involving actions "carried out in Australia by Australian corporations," despite U.S. securities laws.).

[99] *Aenergy*, 2021 WL 1998725, at *20 (citation omitted).

[100] *See Scot. Air Int'l*, 81 F.3d at 1234 (indicating that a need for the application of foreign law supports *forum non conveniens* dismissal).

(2) the District Court did not err in dismissing AE's Complaint on *forum non conveniens* grounds.

For the foregoing reasons, we **AFFIRM** the District Court's May 19, 2021, and June 24, 2021, orders.