# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 6, 2024          Decided December 20, 2024

No. 23-7160

AENERGY, S.A.,
APPELLANT

v.

REPUBLIC OF ANGOLA, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-02514)

———

*Vincent Levy* argued the cause for appellant. With him on the briefs was *Kevin D. Benish*.

*Michael D. Ehrenstein* argued the cause for appellees. With him on the briefs was *Kiran N. Gore*.

Before: HENDERSON, PILLARD and CHILDS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Aenergy, S.A. (Aenergy) seeks damages from Angola for unpaid work

in a breach-of-contract suit over power turbines to be installed in Angola. Aenergy earlier sued in the Southern District of New York, which dismissed its case on forum non conveniens grounds. Following an unsuccessful appeal to the Second Circuit, Aenergy tried its luck again in this jurisdiction after trimming its complaint to drop various defendants and claims. The district court dismissed Aenergy's suit on issue preclusion grounds and, alternatively, under a fresh forum non conveniens analysis.

The issue in this case remains the same—whether Aenergy may litigate the subject matter of the dispute in Angola, providing it with at least some relief. Aenergy's having trimmed certain claims and defendants from its complaint only reinforces that Angola is the proper forum for this quarrel. Accordingly, we affirm the district court's dismissal based on issue preclusion.

## I.    BACKGROUND

This background is taken from Aenergy's complaint, documents attached to or incorporated in the complaint and matters of which the Court may take judicial notice, including public records referred to in the complaint and integral to Aenergy's claim. *See Langeman v. Garland*, 88 F.4th 289, 291–92 (D.C. Cir. 2023). "Because this case was resolved on a motion to dismiss, we accept the amended complaint's factual allegations as true and construe all reasonable inferences in the plaintiff[']s[] favor." *Valambhia v. United Republic of Tanzania*, 964 F.3d 1135, 1137 (D.C. Cir. 2020).

### A.

Aenergy is an Angolan energy company owned by a Portuguese citizen. Aenergy entered into contracts worth over $1 billion with utility subsidiaries of the Angolan Ministry of

Energy and Water (MINEA) to construct, supply and maintain power plants and water infrastructure in Angola. To fulfill these contracts, the parties worked with General Electric Company (GE). Aenergy agreed to install turbines manufactured by GE Packaged Power, Inc. (GE Power) and Angola obtained an over $1 billion credit line from GE Capital EFS Financing, Inc. (GE Capital) to finance the projects. Although the MINEA contracts called for eight turbines, Aenergy contracted to buy fourteen turbines from GE in anticipation of future contracts with Angola. To simplify the transfer of funds, the credit line provided for direct payments from GE Capital to Aenergy and GE Power.

Aenergy began performance and, in December 2017, Angola drew $644 million on the credit facility to satisfy invoices from Aenergy. However, the relationship soon soured, which Aenergy alleges was due to "a 'lie' based on a GE accounting error." *Aenergy, S.A. v. Republic of Angola (Aenergy III)*, 678 F. Supp. 3d 147, 157 (D.D.C. 2023). Aenergy laid out the alleged lie in more detail in its earlier suit in the U.S. District Court for the Southern District of New York (SDNY). There, Aenergy claimed that a risk calculation error by GE led to two GE executives forging letters that purported to amend the Aenergy-MINEA contracts to include four more turbines. *Aenergy, S.A. v. Republic of Angola (Aenergy I)*, No. 20-cv-3569, 2021 WL 1998725, at *3–4 (S.D.N.Y. May 19, 2021). The forgeries led GE to believe it had been paid for twelve out of fourteen turbines but Aenergy believed it had authorized GE Capital to pay GE Power on its behalf for only eight. Allegedly, MINEA initially denounced the forgeries but the Angolan government later chose to terminate the Aenergy-MINEA contracts and transfer the remaining work to GE, justifying the termination by citing irregularities in Aenergy's acquisition of extra turbines. Angolan authorities also seized from Aenergy the four turbines that GE claimed MINEA had

paid for and the Angolan government terminated Aenergy's separate power plant concession, with MINEA there again pointing to irregularities.

**B.**

Aenergy then pursued several legal avenues seeking redress. In Angola, Aenergy first appealed Angola's decision to terminate the contracts to MINEA, which denied the appeal, concluding that Aenergy was responsible for the forgeries. Aenergy then appealed that decision to the Angolan president without success. Next, Aenergy appealed to the Supreme Court of Angola, requesting that the MINEA contracts "be considered in force." S.A. 279. Aenergy also stated that it would "not fail, at its own time and moment, to strive for the reimbursement of an indemnity amount." *Id.* That case was pending during much of the ensuing U.S. litigation but, while *Aenergy III* was on appeal in this Court, the Supreme Court of Angola dismissed the suit and declared the Angolan government's actions valid. Aenergy 28(j) Letter, Ex. A (Aug. 30, 2024).

In the United States, Aenergy sued the Republic of Angola, MINEA, the utility subsidiaries, the Angolan Ministry of Finance (the Angolan Defendants) and three GE defendants in the SDNY. *Aenergy I*, 2021 WL 1998725, at *1. Aenergy brought six claims against the Angolan Defendants: breach of contract as to the MINEA contracts and the concession, unjust enrichment, taking of physical assets, taking of intangible assets and conversion. Aenergy alleged two claims against both sets of defendants: accounting and aiding and abetting. Against the GE defendants only, Aenergy asserted claims of tortious interference with contract and with prospective business relations.

The court dismissed the case on forum non conveniens grounds. *Id.* at \*20. As relevant here, the court emphasized that an uncontested declaration of an Angolan law expert stated that Aenergy could bring "similar claims" in Angola and that the claims involved "humdrum commercial-law principles," which "seem to exist in most jurisdictions" and some of which were "brought under Angolan law." *Id.* at \*12. The court highlighted that even if Aenergy could not bring breach of contract claims in Angola because the statute of limitations had run, it could still bring "claims for unjust enrichment, taking of physical assets in violation of international law, taking of intangible assets in violation of international law, conversion, tortious interference with contract, tortious interference with prospective business relations, accounting, and aiding and abetting." *Id.* at \*13. Therefore, Angola still "permit[ted] litigation of the subject matter of the dispute." *Id.* (quoting *Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 499 (2d Cir. 2002)).

The Second Circuit affirmed that judgment. *Aenergy, S.A. v. Republic of Angola (Aenergy II)*, 31 F.4th 119, 135 (2d Cir. 2022). It explained that "the availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor on identical remedies" provided that "the essential subject matter of the dispute can be adequately addressed" in the alternative forum. *Id.* at 130–31 (quotations omitted). The court emphasized that even if Aenergy could not recover on its breach-of-contract claim, it had brought a lawsuit in Angola, "allowing the Angolan court to address the essential subject matter of the dispute." *Id.* at 131. The Second Circuit also denied Aenergy's requests for rehearing and the U.S. Supreme Court denied certiorari. *Aenergy III*, 678 F. Supp. 3d at 158.

Next, Aenergy sued the Angolan Defendants in federal district court here in the District of Columbia for breach of contract relating to unpaid work and services, seeking compensatory damages. J.A. 13. The district court "credit[ed]" Aenergy's allegation that its breach-of-contract claim was barred from being brought in Angola by a nonwaivable statute of limitations. *Aenergy III*, 678 F. Supp. 3d at 164. Nevertheless, the court dismissed the case, concluding that Aenergy was precluded from relitigating the earlier decisions in the Second Circuit and, in the alternative, that the case should be dismissed on forum non conveniens grounds. *Aenergy III*, 678 F. Supp. 3d at 158. Aenergy timely appealed.

## II.   ANALYSIS

"[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). Here, the district court dismissed Aenergy's suit on both issue preclusion (or collateral estoppel) and forum non conveniens grounds. Because we hold that issue preclusion applies, we need not reach its new forum non conveniens analysis. We review a district court's determination of issue preclusion de novo. *GSS Group Ltd. v. Nat'l Port Auth. of Liber.*, 822 F.3d 598, 604–05 (D.C. Cir. 2016).

## A.

Issue preclusion means that "the determination of a question directly involved in one action is conclusive as to that question in a second suit." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (quotation omitted). This doctrine promotes the goals of "protect[ing]" against "the

expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent verdicts." *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). There are three conditions for issue preclusion to apply:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n,* 439 F.3d 740, 743 (D.C. Cir. 2006) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). The party invoking collateral estoppel bears the burden of establishing that its conditions have been satisfied. *Id.*

"Identity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." 13C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (Wright & Miller) § 4425 (Rev. 4th ed. June 2024). The SDNY dismissed Aenergy's suit and the Second Circuit affirmed on forum non conveniens grounds so that is the issue Angola must establish is the same for issue preclusion to apply. *See* 8A Wright & Miller § 3828.5 ("If one federal court dismisses an action on the basis of forum non conveniens, a second federal court in which the case is brought is bound by

that decision, and should not relitigate it."); 13D Wright & Miller § 4436 ("[O]rdinarily [forum non conveniens] cannot work issue preclusion as to other courts because the convenience issues are intrinsically different, but issue preclusion is appropriate if the issue actually remains the same.").

"A party seeking dismissal for *forum non conveniens* bears the burden of showing both (1) that an adequate alternative forum is available to hear the dispute, and (2) if so, that the balance of certain public and private interest factors strongly counsels in favor of trying the dispute in the alternative forum." *In re Air Crash over the S. Indian Ocean on March 8, 2014*, 946 F.3d 607, 612 (D.C. Cir. 2020). "The doctrine of *forum non conveniens* is to be applied only in rare cases, and only where the defendant meets a heavy burden of showing that suit in the United States is so inconvenient as to be harassing, vexing, or oppressive." *Shi v. New Mighty U.S. Tr.*, 918 F.3d 944, 953 (D.C. Cir. 2019).

An alternative forum is available if all defendants are amenable to process in another jurisdiction. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); 8A Wright & Miller § 3828.3. An alternative forum is not available if a claim would be barred at the time of the lawsuit. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 158–59 (2d Cir. 2005) (holding that an alternative forum is not available if an earlier judgment precludes the issue); *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 202 (4th Cir. 2009) (holding that an alternative forum is not available if the statute of limitations has expired); *Fireman's Fund Ins. v. Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 496 (10th Cir. 2012) (same).

As to adequacy, the Court asks whether "the remedy offered by the other forum is clearly unsatisfactory," as, for example, "where the alternative forum does not permit litigation of the *subject matter* of the dispute." *Piper Aircraft*, 454 U.S. at 254 n.22 (emphasis added). "[A] district court acts within its discretion in deeming [another] forum an adequate alternative to a U.S. court" if it "would provide a plaintiff at least some remedy." *In re Air Crash*, 946 F.3d at 613. "[T]he defendant faces a rather low bar for establishing that the alternative forum is adequate." 8A Wright & Miller § 3828.3.

**B.**

Aenergy concedes that it brought a breach-of-contract claim for unpaid work in the SDNY. However, Aenergy now argues that the same issue was not contested and submitted for determination in the New York litigation because the briefs filed in the Second Circuit focused on the Angolan government's termination of the contract rather than the unpaid work claim. Aenergy's narrow framing mischaracterizes how the scope of an issue is defined for the forum non conveniens analysis. As to adequacy, under *Piper Aircraft* an alternative forum may be deemed adequate if it permits litigation of the "subject matter of the dispute." 454 U.S. at 254 n.22. Here, the SDNY emphasized that Aenergy could bring eight claims on the common subject matter other than breach of contract in Angola. *Aenergy I*, 2021 WL 1998725, at *13. And the Second Circuit agreed. *Aenergy II*, 31 F.4th at 131. In other words, Angola "would provide [Aenergy] at least some remedy." *In re Air Crash*, 946 F.3d at 613. That describes an adequate forum.

As to the public and private interest factors, Aenergy relies on two out-of-circuit cases for the proposition that its "trimmed-down, new suit" does not raise the same issue as the

New York litigation. Appellant Br. 22. Both cases are inapposite. In *Conflict Kinetics, Inc. v. Bagira Sys., Ltd.*, No. 22-2000, 2024 WL 339347 (4th Cir. Jan. 30, 2024), the Fourth Circuit vacated a district court's application of issue preclusion after the plaintiff refiled a lawsuit that had been dismissed in the same district after adding two more defendants. The court highlighted that, in some circumstances, additional defendants may change the forum non conveniens analysis because the alternative forum must be available, adequate and convenient for all defendants. *Id.* at *3; *see also* 8A Wright & Miller § 3828.3 (alternative forum must be available as to all parties). True enough. Even so, in that case the plaintiff added a U.S. defendant, potentially making the United States a more convenient forum. By contrast, here Aenergy dropped the GE defendants, a fortiori making Angola the more convenient forum.

Aenergy also points to *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.*, No. 3:08-cv-31-J-32MCR, 2009 WL 55010 (M.D. Fla. Jan. 7, 2009), in which the district court declined to apply issue preclusion to a case refiled before the same judge after being dismissed on forum non conveniens grounds. The court highlighted that the second complaint omitted the previous tort and statutory claims, leaving only breach-of-contract claims, thereby reducing the scope of admissible evidence. *Id.* at *4. Insofar as that case suggests that a plaintiff may evade the application of issue preclusion to an earlier forum non conveniens dismissal simply by dropping some claims, we are not bound by it. However, *Renfroe* also emphasized that the tort claims appeared to be governed by Japanese law and involved documents in Japanese located in Japan but the contract claims were governed by U.S. law and involved documents in English located in the United States. *Id.* at *2, 5, 7. Here, the new complaint still pertains to Angolan contracts governed by Angolan law and implicates both

documents that would need translation from Portuguese and witnesses who would need interpreters. J.A. 131–34. In other words, there would still be significant cost and inconvenience associated with litigating the case in the United States. The analysis of the public and private interest factors, then, remains the same.

Aenergy also claims the same issue was not actually and necessarily determined in the New York suit. As Aenergy points out, the Second Circuit's ruling on Angola's adequacy as an alternative forum emphasized that Aenergy was pursuing litigation in the Supreme Court of Angola as a reason for finding that forum adequate. *Aenergy II*, 31 F.4th at 131 ("[E]ven if [Aenergy] cannot recover damages on its breach of contract claim against Angola, it has sought equitable contract remedies in Angola."). Contrary to Angola's assertions otherwise, the case before the Supreme Court of Angola was an administrative action seeking contract reinstatement rather than a suit for damages. *See* S.A. 279. Yet the Second Circuit emphasized that the district court had "correctly noted" that Aenergy brought eight other claims against Angola apart from the breach-of-contract claim, all of which could be brought in Angola and were separate from the administrative proceedings before the Supreme Court of Angola. *Aenergy II*, 31 F.4th at 131. The Second Circuit thus explicitly affirmed the SDNY's judgment "[n]otwithstanding the asserted unavailability of breach of contract damages against Angola." *Id.* Therefore, the New York litigation actually and necessarily resolved the issue of adequacy regarding Aenergy's breach-of-contract claim because that claim falls within a broader set of claims and potential remedies that can be brought in Angola.

Aenergy does not assert that applying issue preclusion here works any basic unfairness, thus forfeiting that argument. *See, e.g.*, *TIG Ins. v. Republic of Argentina*, 110 F.4th 221, 239

(D.C. Cir. 2024). In any event, the district court correctly found there was no basic unfairness because Aenergy had similar incentives to litigate the earlier case, the stakes here are not higher and there is no risk that the earlier proceedings were seriously defective. J.A. 125–26.

## C.

After briefing and before oral argument in this appeal, the Supreme Court of Angola issued a decision and judgment in Aenergy's administrative action against Angola. *See* Aenergy 28(j) Letter, Ex. A (Aug. 30, 2024). Relevant to the preclusive force of the New York courts' forum non conveniens analysis, the court stated that any breach of contract claim would have to be "assessed in a separate action" because the court was limited to "analyz[ing] the legality . . . of [Angola's] administrative acts." *See* Aenergy Translation Letter, Ex. B at 214 (Sept. 27, 2024). Ultimately, the court declared MINEA and the Angolan president's actions regarding the Aenergy contracts to be valid. *See id.* at 221. Therefore, the court dismissed Aenergy's suit. *Id.*

Aenergy contends that the decision by the Supreme Court of Angola eliminates the only procedural pathway to relief relied upon by the Second Circuit and the district court below, thereby altering the forum non conveniens analysis and rendering issue preclusion inapplicable. Not so. As explained above, the SDNY and Second Circuit also highlighted that there were eight other claims that Aenergy could bring in Angola and so the forum non conveniens analysis did not turn solely on the Supreme Court of Angola litigation or its resolution.

However, in *Montana v. United States*, the Supreme Court said that "significant changes in controlling facts or legal principles" occurring after an earlier judgment may "warrant

an exception to the normal rules of preclusion." 440 U.S. at 155, 157, *cited by Herrera v. Wyoming*, 587 U.S. 329, 343 (2019). The Supreme Court continued that "changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues." *Id.* at 159.

That principle does not apply here. The fact that Aenergy was then still litigating its administrative action in the Supreme Court of Angola was not "essential to the judgment" of the SDNY or of the Second Circuit. Rather, those courts held that Aenergy might still pursue eight other claims in Angola, which offered it "at least some remedy" and was enough to establish Angola as an adequate alternative forum. *In re Air Crash*, 946 F.3d at 613. Because those facts have not changed, the adequacy analysis has not changed and issue preclusion applies to the SDNY's and Second Circuit's adequacy holding. In any event, the relevant question for the adequate forum analysis is whether a party can *bring* a claim in the alternative forum, not whether the party will ultimately *prevail* in the alternative forum. Aenergy's loss at the Supreme Court of Angola similarly did not change the answer to that question and thus did not affect the applicability of issue preclusion to the New York courts' forum non conveniens determination.

\* \* \*

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*